**UNITED STATES COURT OF APPEALS**
**FOR THE FIFTH CIRCUIT**

———————————————

**No. 02-40297**

———————————————

**UNITED STATES OF AMERICA,**

**Plaintiff-Appellee,**

**versus**

**JOSE ALBERTO GAMEZ-GONZALEZ,**

**Defendant-Appellant.**

_____

**Appeal from the United States District Court**
**for the Southern District of Texas**

_____
January 27, 2003
Before SMITH, BARKSDALE, and EMILIO M. GARZA, Circuit Judges.

RHESA HAWKINS BARKSDALE, Circuit Judge:

Jose Alberto Gamez-Gonzalez was convicted for possession of more than five kilograms of a controlled substance (cocaine), with intent to distribute, in violation of 21 U.S.C. § 841(a)(1) and (b)(1)(A). The principal issue at hand is whether the Government was required to prove Gamez's *mens rea* regarding the type and quantity of the controlled substance. **AFFIRMED.**

I.

In July 2001, at the Falfurrias Border Patrol checkpoint, a search of the truck driven by Gamez revealed approximately 123 kilograms of cocaine in a secret compartment. A jury convicted

Gamez that October; he was sentenced, *inter alia*, to 245 months in prison.

## II.

Gamez maintains:  the evidence was insufficient to prove he knowingly possessed *any* controlled substance; pursuant to **Apprendi v. New Jersey**, 530 U.S. 466 (2000), the Government was required, and failed, to prove he knowingly possessed *the type and quantity* of the controlled substance for which he was convicted; § 841 is unconstitutional in the light of **Apprendi**; and the Government's rebuttal closing argument constituted reversible error.

### A.

At the close of the evidence, Gamez moved unsuccessfully for judgment of acquittal based on evidence insufficiency, with emphasis on lack of knowledge.  Accordingly, at issue is whether "a rational trier of fact could have found that the evidence established the elements of the offenses beyond a reasonable doubt", considering "all the evidence in the light most favorable to the verdict".  **United States v. Peters**, 283 F.3d 300, 307 (5th Cir.), *cert. denied*, **Edmonson v. United States**, 122 S. Ct. 1949 (2002), *and cert. denied*, **Peters v. United States**, 122 S. Ct. 2612 (2002).

"[W]hat the fact finder is permitted to infer from the evidence in a particular case is governed by a rule of reason[;] fact finders may properly use their common sense and evaluate the

2

facts in light of their common knowledge of the natural tendencies and inclinations of human beings". *United States v. Ayala*, 887 F.2d 62, 67 (5th Cir. 1989)(internal quotation marks omitted). Along this line, "[c]ircumstances altogether inconclusive, if separately considered, may, by their number and joint operation, especially when corroborated by moral coincidences, be sufficient to constitute conclusive proof". *Id.* (internal quotation marks omitted).

Concerning Gamez's claimed lack of knowledge of any drugs in his vehicle, a jury "may infer knowledge of the presence of contraband from the exercise of control over the vehicle in which it is concealed". *United States v. Jones*, 185 F.3d 459, 464 (5th Cir. 1999), *cert. denied*, 531 U.S. 850 (2000). "If the substance is in a hidden compartment of the vehicle, as in [this] case, additional circumstantial evidence that is suspicious in nature or demonstrates guilty knowledge is required." *Id.*

On the night of 16 July 2001, Gamez, a tractor trailer operator, loaded his truck in McAllen, Texas, with limes to be delivered to Brooklyn, New York. According to the bill of lading, the load was signed out early the next morning — 12:21 a.m. on 17 July.

Approximately three and one-half hours later (approximately 4:00 a.m.), Gamez arrived in the truck at the Falfurrias

checkpoint.  It generally takes only one and one-half hours to travel between McAllen and the checkpoint.

At the primary inspection area, Gamez stated he was a United States citizen and was carrying limes.  During this discussion, a Border Patrol Agent observed that Gamez appeared nervous.  Agents directed the truck to a secondary inspection area, where Gamez exited the vehicle and offered them his bill of lading.  As an Agent later testified, Gamez was "pacing back and forth" and was "extremely talkative".

Agents searched the truck using a canine that alerted to the sleeping area.  Two compartment doors in a false ceiling above that area were found; the sealant for these doors appeared to be wet and fresh.  In the hidden compartment, Agents found 55 bundles of 78%-pure cocaine, weighing approximately 123 kilograms, with a street value of approximately $9 million.

Gamez's fingerprints were not found on the bundles.  He did, however, have $1,600 in cash, an amount consistent with the typical cash advance paid cocaine transporters.

Gamez was the registered owner of the tractor, but there were significant discrepancies in the title's history.  He had submitted an application for a Texas title, stating he had purchased the tractor from Andrew Norris of Timmons International (a Louisiana dealership) that May; the title, however, listed another purchaser.  Gamez also submitted an affidavit to the Texas Department of

4

Transportation (DOT) for a correction to the Louisiana title. A DOT employee testified that the affidavit was probably filed to account for the alterations Gamez made on the Louisiana title in order to indicate he had purchased the tractor from Norris and Timmons International.

Norris testified that he had never met Gamez and had not sold him the tractor. Instead, Norris had sold it on behalf of Timmons in September 2000 to Victor Fernandez. Fernandez had the paperwork changed to reflect that the sale was to Ricardo Gonzalez, for whom Fernandez acted as broker.

Three days later, Gonzalez sold the tractor to unidentified men but did not give them the correction to the title, which he had yet to receive. The men said they intended to take the tractor to Mexico.

Norris testified that, at the time of the sale to Fernandez, no alterations had been made in the tractor's sleeper area. Gonzalez testified that he made no such alterations.

The evidence was sufficient. For example: Gamez was extremely nervous at the checkpoint, *see **Jones***, 185 F.3d at 464 (nervousness may support inference of guilty knowledge if facts suggest nervousness derived from consciousness of criminal behavior); he had $1,600, an amount consistent with that advanced to drivers transporting cocaine; the hatch for the hidden compartment had been recently sealed and there was a concomitant

5

two-hour gap between when Gamez should have arrived at the checkpoint and when he did arrive; there was evidence Gamez tampered with the truck's title and that the truck did not contain a hidden compartment at the time of the previous owners' possession; and the jury could reasonably infer Gamez would not have been allowed to transport cocaine worth almost $9 million if he was not part of the trafficking scheme, *see*, *e.g.*, **United States v. Garcia-Flores**, 246 F.3d 451, 455 (5th Cir. 2001).

## B.

Gamez was charged, *inter alia*, with possession of, with intent to distribute, more than five kilograms of cocaine, in violation of § 841(a)(1) and (b)(1)(A). The drug type and quantity were submitted to the jury and proved beyond a reasonable doubt.

Pre-**Apprendi**, our court held that the knowledge required for a § 841 conviction is only that the substance possessed was a controlled substance. **United States v. Valencia-Gonzalez**, 172 F.3d 344, 345 (5th Cir.), *cert. denied*, 528 U.S. 894 (1999). Gamez urges that, post-**Apprendi**, the Government is now required to prove, beyond a reasonable doubt, Gamez's knowledge of the drug type and quantity.

**Apprendi** held: "any fact that increases the penalty for a crime beyond the prescribed statutory maximum must be ... proved beyond a reasonable doubt". 530 U.S. at 490. Because drug type and quantity are, post-**Apprendi**, elements of the offense, Gamez

6

maintains that, even if the evidence was sufficient to prove he knowingly possessed *some* controlled substance, the evidence was still insufficient because the Government did not prove he *knowingly* possessed the type and quantity on which his conviction was based.

As noted, the Government proved beyond a reasonable doubt that Gamez possessed more than five kilograms of cocaine. Section 841(a)(1) makes it unlawful to "knowingly or intentionally ... possess with intent to ... distribute ... a controlled substance". For "any person who violates subsection (a) of [§ 841]", subsection (b) prescribes penalties based on drug type and quantity *involved* in the unlawful act. 21 U.S.C. § 841(b). Restated, those penalties are based on "violation[s] of subsection (a) ... *involving*" specified amounts. 21 U.S.C. § 841(b)(1)(A) and (B) (emphasis added). For example, if, as in this case, the § 841(a) unlawful act "involv[es]" five kilograms or more of cocaine, subsection (b)(1)(A)(ii)(II) mandates a minimum of ten years in prison (maximum life); if the § 841(a) unlawful act "involv[es]" 500 grams or more of cocaine, subsection (b)(1)(B)(ii)(II) mandates a minimum of five years in prison (maximum 40 years).

In short, subsection (b) does not make Gamez's *knowledge* of drug type or quantity an element of the § 841 offense. Nevertheless, Gamez asserts that the § 841(a) "knowingly or intentionally" language, required for the act to be unlawful,

7

"modif[ies] all of the elements of § 841, including drug type and quantity" addressed in § 841(b) (penalties).

*Apprendi* is inapposite. *Knowledge* of drug type and quantity is *not*, in the words of *Apprendi*, a "fact that increases the [subsection (b)] penalty". 530 U.S. at 490. The penalty is, instead, based solely on the type and quantity *involved* in the unlawful act. As stated in *Valencia-Gonzalez*, § 841 employs a "strict liability punishment" scheme. 172 F.3d at 346. In sum, for § 841, the knowledge required for the act to be unlawful does *not* apply to the penalty.

In this regard, Gamez's proposed application of *Apprendi* has been rejected by each of the five circuits that has considered it. *United States v. Carranza*, 289 F.3d 634, 644 (9th Cir.)("*Apprendi* did not change the long established rule that the government need not prove that the defendant knew the *type* and *amount* of a controlled substance that he imported or possessed...."), *cert. denied*, 123 S. Ct. 572 (2002); *United States v. Collazo-Aponte*, 281 F.3d 320, 326 (1st Cir.) ("[N]othing in the statutory language of § 841(b) supports a *mens rea* requirement".), *cert. denied*, 123 S. Ct. 275 (2002); *United States v. Barbosa*, 271 F.3d 438, 458 (3rd Cir. 2001) ("We believe that the structure of the drug statutes and the policies behind them show that the Government's *mens rea* burden has not changed with the advent of *Apprendi*."), *cert. denied*, 123

8

S. Ct. 660 (2002); ***United States v. Carrera***, 259 F.3d 818, 830 (7th Cir. 2001) (In the 21 U.S.C. § 846 context (conspiracy to possess with intent to distribute), "[t]he Government need only prove that the defendant was aware that some controlled substance was involved".); ***United States v. Sheppard***, 219 F.3d 766, 768 n. 2 (8th Cir. 2000) ("[T]he § 841(b) sentencing provisions only require the government to prove that the offense 'involved' a particular type and quantity of controlled substance, not that the defendant knew he was distributing that particular type and quantity".), *cert. denied*, 531 U.S. 1200 (2001). *See also* ***United States v. Garcia***, 252 F.3d 838, 844 (6th Cir. 2001) (In post-***Apprendi*** case, Government need not prove *mens rea* as to drug type and quantity.).

## C.

Gamez contends, for the first time on appeal, that, in the light of ***Apprendi***, § 841(a) and (b) are unconstitutional. This belated contention would normally be reviewed only for plain error. *E.g.,* ***United States v. Lankford***, 196 F.3d 563, 570 (5th Cir. 1999), *cert. denied*, 529 U.S. 1119 (2000).

In any event, Gamez concedes our court has rejected this claim, *see* ***United States v. Slaughter***, 238 F.3d 580, 582 (5th Cir.), *cert. denied*, 532 U.S. 1045 (2001). Gamez presents the claim only to preserve it for Supreme Court review.

9

D.

Upon the Government's stating in its rebuttal closing argument that "[t]he Defense's job is to blow as much smoke towards the jury box as they can, confuse things", Gamez's counsel objected. The district court implicitly overruled the objection by allowing the prosecutor, in his words, to "specify what he mean[t] by 'smoke'". Gamez claims the blow-smoke remark constitutes reversible error because it both suggested defense counsel was attempting to mislead the jury and vouched for the credibility of the Government's case.

Obviously, the remark was extremely unprofessional and otherwise inappropriate. Nevertheless, it constitutes reversible error only if it is "so improper as to affect [Gamez's] substantial rights". *United States v. Vaccaro*, 115 F.3d 1211, 1215 (5th Cir. 1997), *cert. denied*, 522 U.S. 1047 (1998). Considered are: "(1) the magnitude of the prejudicial effect of the statements; (2) the efficacy of any cautionary instruction; and (3) the strength of the evidence of the defendant's guilt". *United States v. Lowenberg*, 853 F.3d 295, 302 (5th Cir. 1988), *cert. denied*, 489 U.S. 1032 (1989).

Following the remark, the prosecutor explained that, by "smoke", he was referring to the defense's theory of the case. And, immediately after the Government's closing argument, the court instructed the jury to base its verdict "solely upon the evidence without prejudice or sympathy" and that such evidence did not

10

include "any statement, objections, or arguments that the attorneys made".  In this light, and considering the evidence of Gamez's guilt, there was no reversible error.

### III.

For the foregoing reasons, the judgment is

**AFFIRMED.**

11