United States Court of Appeals
Fifth Circuit

**F I L E D**

**October 7, 2004**

Charles R. Fulbruge III
Clerk

UNITED STATES COURT OF APPEALS
FIFTH CIRCUIT

———————————————

No. 03-40886

———————————————

UNITED STATES OF AMERICA,

Plaintiff-Appellee,

versus

FRANCISCO JAVIER CRUZ,

Defendant-Appellant.

———————————————————————————————————————

Appeal from United States District Court
for the Southern District of Texas

———————————————————————————————————————

Before SMITH, WIENER, and PICKERING, Circuit Judges.

CHARLES W. PICKERING, SR., Circuit Judge:

Francisco Javier Cruz was convicted by a jury of importation and possession with intent to distribute twenty kilograms of cocaine. The district court sentenced Cruz to concurrent terms of 210 months of imprisonment and five years of supervised release. Cruz timely perfected the instant appeal. We affirm.

On January 29, 2001, Cruz and a passenger arrived at the Hidalgo International Bridge inspection area at the United States Border in a Ford Ranger pickup. When a border agent placed the truck license number into the computer of the Treasury Enforcement Communications System ("TECS"), an alarm sounded. Cruz was directed to proceed with the vehicle to a secondary inspection area. A subsequent search of the vehicle revealed a concealed compartment containing cocaine.

ISSUES

Cruz first attacks the sufficiency of the evidence used to convict him. He contends that there was insufficient evidence to prove his knowing involvement with any controlled substance. He further argues that the court mistakenly gave a jury instruction that required proof beyond a reasonable doubt that Cruz not only knew that he was in possession of a controlled substance, but required proof beyond a reasonable doubt that Cruz knew the type and quantity of drugs he was transporting. Consequently, Cruz argues that because of this instruction the government's burden of proof was increased and it was incumbent upon the government to prove beyond a reasonable doubt that not only did Cruz know that he possessed a controlled substance but that he knew the type and quantity of drugs which he possessed. The next issue Cruz raises is that the district court committed plain error when it sentenced him based on the gross weight of the cocaine as opposed to its net weight. Cruz also complains that the district court erred as a matter of law in sentencing him because it is unclear whether the court was aware of its ability to depart downward. Finally, Cruz challenges the constitutionality of 21 U.S.C.A. §§841 and 960 as violative of the Sixth Amendment as expressed in *Apprendi v. New Jersey*, 530 U.S. 466, 120 S.Ct. 2348, 147 L.Ed.2d 435 (2000).

SUFFICIENCY OF THE EVIDENCE

We review the jury's decision only to ensure that there was sufficient evidence to support their conclusion. We consider all evidence in the light most favorable to the verdict, and ask whether a rational finder of fact could have found that the evidence established all of the elements of the offense beyond a reasonable doubt. *United States v. Villarreal*, 324 F.3d 319, 322 (5th Cir.

2003).  The jury's determinations of witness credibility are beyond the scope of our review and we will afford all reasonable inferences of fact to the jury's verdict.  *United States v. McCauley*, 253 F.3d 815, 818 (5ᵗʰ Cir. 2001).

As noted above, Cruz argues that the evidence was insufficient to prove his knowing involvement with any controlled substance, but that even if the evidence was sufficient to prove that he knowingly possessed and imported a controlled substance it did not establish that he knowingly possessed twenty kilograms of cocaine.  He asserts that the Government was obligated to prove specific drug type and quantity under the law of the case doctrine when the Government did not object to the jury charge which imposed such a requirement.  Knowledge of the presence of a controlled substance is an essential element of the offenses of (1) possession with intent to distribute and (2) importation of cocaine.  *See United States v. Moreno*, 185 F.3d 465, 471 (5ᵗʰ Cir. 1999).  Knowledge is the only element Cruz challenges on sufficiency of the evidence grounds.

Law of the Case

This court has held in the face of an *Apprendi* challenge asserting that the government was required to prove knowing possession of the type and quantity of the controlled substance "*knowledge* of drug type and quantity is *not*, in the words of *Apprendi*, a 'fact that increases the [subsection (b)] penalty.'" *United States v. Gamez-Gonzalez*, 319 F.3d 695, 700 (5th Cir. 2003) *(cert. denied,*  538 U.S. 1068, 123 S.Ct. 2241, 155 L.Ed.2d 1126 (2003)) *(quoting Apprendi*, 530 U.S. at 490, 120 S.Ct. 2348) (emphasis in original).  Thus, "subsection (b) does not make [Cruz's] *knowledge* of drug type or quantity an element of a § 841 offense." *Id.* (emphasis in original).  However, if the indictment charges knowledge, an erroneous instruction based thereon,

3

may become the law of the case if the Government fails to object, and may increase the government's burden of proof on a particular element of the offense. *See United States v. Duncan*, 164 F.3d 239, 242 (5th Cir. 1999)(erroneous instruction requiring proof of defendant's knowledge of official hearing, in witness tampering case, became law of the case where government did not object, nor seek plain error review); *United States v. Taylor*, 933 F.2d 307, 310 (5th Cir. 1991)(*cert. denied* 502 U.S. 883 , 112 S.Ct. 235 , 116 L.Ed.2d 191 1991)(indictment and instructions made specific intent to escape an element of the crime); and *United States v. Spletzer*, 535 F.2d 950, 954 (5th Cir. 1976)(same); *United States v. Abod*, 770 F.2d 1293, 1295 (5th Cir. 1985), fn.1 (erroneous instruction not objected to by government made counterfeit character of credit card an essential element of the crime of using a counterfeit card).

The indictment in this case charges in Count 1 that the defendant "did knowingly and intentionally import into the United States of America from the Republic of Mexico more than five kilograms of cocaine, that is, approximately 20 kilograms of cocaine, a Scheduled II controlled substance." Count 2 charges that the defendant "did knowingly and intentionally possess with intent to distribute more than five kilograms of cocaine, that is, approximately 20 kilograms of cocaine, a Scheduled II controlled substance."

The court instructed that "knowingly means that what you did you did voluntarily and intentionally, voluntarily and intentionally, because you wanted to do it and not by accident or mistake." The court also instructed that it is illegal "to possess with the intent to distribute a controlled substance. Cocaine is a controlled substance under the laws of the United States." The district judge then went on to explain the law as it applied to each Count as follows:

> In order for you to find the defendant guilty of Count 2, you

4

must be satisfied of all of the following matters by proof beyond a reasonable doubt.

Number 1, that he knowingly and willfully, remember these two terms, that he will (sic) knowingly and willfully, <u>possessed the cocaine in question</u>.

Number 2, that the substance was, in fact, cocaine and weighed 20 kilos, more or less, 45 pounds, more or less.

Number 3, that he possessed it with the intent to distribute it. That he possessed it with the intent to distribute it.

.   .   .

Let's go on to Count Number 1. Count Number 1 alleges that the defendant on the date in question imported into the United States an alleged amount of cocaine from Mexico.

In order for you to find the defendant guilty of Count Number 1, you must be satisfied by proof beyond a reasonable doubt that he <u>knowingly and willfully possessed the 20 kilos, more or less, of cocaine in question</u>. And that the defendant having in his possession - - that in fact it was cocaine, and that was a stipulation entered into by the parties but remember you are the ones who make that determination. And, in addition to that, that he did import it on the date in question, more or less, at or about the date in question, from the Republic of Mexico into the United States.

(Emphasis added.)

This court is now called upon to decide the issue of whether or not the law of the case doctrine required the government in this situation to prove type and quantity of drug. Based upon the prior rulings of this court as discussed above, and because the indictment charged that the defendant knowingly possessed twenty kilograms of cocaine with intent to distribute and that he knowingly imported such from the Republic of Mexico into the United States and based on the district court's charge to the jury, it was incumbent upon the government to prove that the

5

defendant had such knowledge. We pause to state that such a requirement is only based on the facts of this case, and is not a modification of *Gamez-Gonzalez*.[1] Only because the indictment charged knowledge of type and quantity of the controlled substance and the court instructed on knowledge of same do we reach this conclusion.

The Evidence of Knowledge

After carefully reviewing the evidence submitted to the jury, we conclude that the evidence clearly was sufficient for the jury to find beyond a reasonable doubt that Cruz knowingly possessed a controlled substance with the intent to distribute, and that he imported same. The question we must answer is whether the evidence was sufficient for the jury to find beyond a reasonable doubt that Cruz had knowledge of the actual type and quantity of drug which he possessed.

To support his argument of lack of knowledge, Cruz asserts that the Government failed to produce any evidence of his participation in the creation of the hidden compartment or in the packaging and storage of the cocaine. Generally, "a jury may infer knowledge from the defendant's control over a vehicle containing contraband unless the drugs are hidden in compartments, in which case proof of the defendant's knowledge depends on inference and circumstantial evidence." *United States v. Garcia-Flores*, 246 F.3d 451, 454 (5th Cir. 2001).

The evidence produced at trial indicates that when Cruz drove into the primary inspection area he was slouching with his arm over and out the pickup door and his head sticking out of the truck. A customs agent who was working the outside booth at the primary inspection area

---

[1] *Gamez-Gonzalez* held that the elements of a §841 offense do not include knowledge of the type and quantity of a controlled substance.

6

described Cruz' posture as "pretty uncommon" because most people tend to draw back when an agent approaches. The agent testified that Cruz' posture indicated he did not want the agent to get close to the truck.

Cruz told the agent that he and his passenger had gone to Mexico for about 45 minutes to eat and that the truck belonged to him. After his arrest, Cruz changed his story and stated he had been in Mexico for three days partying. At trial, the witness, Augustine Cisneros, testified that both he and Cruz had been in the United States the day before the arrest watching the Super Bowl.

The agent directed Cruz to the secondary inspection area where Agent Brown interviewed Cruz and inspected the vehicle. Cruz also told Brown the truck belonged to him. The computer check of the truck's license plate revealed that an alert had been placed on the vehicle in early January. The TECS alert included a note that the vehicle might have a secret compartment to facilitate the transportation of contraband. Brown leaned his head into the vehicle and noticed a strong odor of glue or Bondo. Brown, at that point, requested a canine inspection of Cruz' truck.

Agent Armijo, the canine handler, smelled a strong odor of fresh paint coming from Cruz' truck. Armijo asked Cruz whether the truck belonged to him and whether the truck had been repaired recently. Cruz told Armijo that he owned the truck and that it had not been repaired recently.

A canine trained in the detection of controlled substances alerted to the interior of the truck. Agents found a trap door in the truck's rear wall just behind the driver's seat. The area was carpeted over and had fresh paint over Bondo on top of the trap door. Inside the hidden compartment agents discovered 19 packages covered with grease and wrapped with layers of

7

cellophane, aluminum foil and brown tape. The packages ultimately were determined to contain cocaine and had a gross weight of 20.52 kilograms with a street value of approximately $260, 000 - $720,000.

The truck was registered to an unidentified man named Juan Medina. The truck was also insured in Medina's name by a monthly policy effective January 23, 2001,[2] issued six days before the border stop. There was no driver's license or social security number listed on the temporary insurance card which was issued in Medina's name. The insurance agent had been provided with a phone number for Medina, and United Scaffolding was listed as Medina's employer. It turned out that the telephone number belonged to a woman who did not know Medina or Cruz and United Scaffolding had no record of an employee named Juan Medina. Agents testified at trial that placing insurance on a drug smuggling vehicle is a common *modus operandi* for drug smugglers so that in the event they are stopped, they can produce the necessary proof of insurance and avert unnecessary attention. Agents also seized from Cruz $1920 in cash and a cellular telephone.

The jury could infer that it would be unlikely for drug smugglers to entrust such a large quantity of their drugs to someone with no knowledge of them. *See United States v. Del Aquila-Reyes*, 722 F.2d 155 (5th Cir. 1983). The high value of the drugs involved ($260,000 - $720,000) could also have been highly probative of Cruz' knowledge of the drugs. *See Villareal*, 324 F.3d at 324. Cruz' conflicting and changing stories to the agents at the inspection site about his whereabouts on the days before he was stopped, and his implausible story about his ownership of

_____

[2] The evidence revealed that a one-month policy was also issued covering this truck in the name of Juan Medina in November 2000.

8

the vehicle, when it was registered and insured to another, who could not be located nor identified, could also have led the jury to appropriately infer knowledge of the cocaine in question. *See United States v. Jones*, 185 F.3d 459, 464 (5th Cir 1999)(*cert. denied*, 531 U.S. 850, 121 S.Ct. 125 , 148 L.Ed.2d 79 (2000)). The strong odor of paint and Bondo inside the vehicle, and Cruz' denial that it had been recently repaired could also have supported the jury's inference of knowledge of the cocaine in the hidden compartment located immediately behind Cruz as he drove the vehicle. *Id.*

In summary, based on the specific facts of this case--i.e., defendant Cruz drove into the inspection area acting suspicious, he obviously lied about how long and why he was in Mexico (he told completely contradictory stories both of which could not have been truthful); he claimed that he owned the truck, yet the truck was registered and insured in the name of a mysterious man, Juan Medino, who could not be found; the insurance policy was a monthly policy issued only six days before the stop; there was a previous insurance policy that had been issued for only one month; Cruz claimed that the truck had not been recently repaired, but because of the smell of Bondo and fresh paint he should have known better; and that Cruz had been entrusted with a load of cocaine worth from a quarter of a million dollars to three quarters of a million dollars--it was not unreasonable for a jury to have found beyond a reasonable doubt that Cruz would not have been in possession of this much cocaine, under these circumstances, without knowing <u>what</u> he was transporting. It is reasonable to assume that the owners of 20 kilograms of cocaine, worth a quarter to three quarters of a million dollars, would not have entrusted this cocaine to someone who did not know what he was transporting. If someone was transporting a stolen piece of art that was very valuable, it would not be unreasonable for a jury to infer that he knew that he was

9

transporting art work, not cash or diamonds. The same is true in this specific situation, it was not unreasonable for the jury to find beyond a reasonable doubt that Cruz knew he was transporting cocaine that weighed approximately 20 kilograms. We might not have made this finding beyond a reasonable doubt, but the jury did. That finding is entitled to deference.

Viewing the evidence and reasonable inferences in the light most favorable to the verdict, and accepting the jury's credibility determinations as we must, we conclude that there was not only sufficient evidence to establish, beyond a reasonable doubt, Cruz' knowledge that he possessed and imported a controlled substance, but that there was sufficient evidence to establish beyond a reasonable doubt his knowledge that the controlled substance was in fact 20 kilograms, more or less, of cocaine. *See Villareal*, 324 F.3d at 324; and *Jones*, 185 F.3d at 464.

SENTENCING ISSUES

We review the district court's interpretation and application of the Guidelines *de novo* and its underlying factual findings for clear error. *United States v. Cabrera*, 288 F.3d 163, 168 (5th Cir.2002). A finding of fact is clearly erroneous if, based on a consideration of all the evidence, we are left with the definite and firm conviction that a mistake has been made. *Id.*

<u>Sentencing Court's Determination of the Weight of the Cocaine</u>

If Cruz possessed at least 15 kilograms of cocaine, then the sentence imposed was correct. Fifteen kilograms is the breaking point in the Guidelines. USSG §2D1.1. Consequently whether Cruz possessed 15 kilograms of cocaine or 20 kilograms of cocaine, the sentence would have been the same.

Cruz contends that the court erred by sentencing him based upon the gross weight of the

drug seized rather than the net weight of the drugs seized. Cruz claims that the packaging in which the cocaine was found was sufficient to decrease the net weight of the cocaine to less than 15 kilograms. If the weight was below 15 kilograms, Guideline §2D1.1 would not have applied to increase his sentence.

The PSR (Presentence Investigation Report) listed the type and quantity of drugs as being 20.52 kilograms of cocaine. Cruz neither objected to this factual allegation in the PSR, nor the finding by the court that he possessed 20 kilograms of cocaine. As such, we review the district court's sentencing decision for plain error. Plain error is "'error so obvious and substantial that failure to notice it would affect the fairness, integrity, or public reputation of [the] judicial proceedings' and would 'result in manifest injustice.'" *United States v. Pofahl*, 990 F.2d 1456, 1479 (5th Cir. 1993)(*cert. denied by Nunn v. U.S.*, 510 U.S. 898 , 114 S.Ct. 266 , 126 L.Ed.2d 218 (1993))(citations omitted). "As long as a factual finding is plausible in light of the record as a whole, it is not clearly erroneous." *United States v. Simpson*, 334 F.3d 453, 456 (5th Cir. 2003).

The district court viewed pictures of the packaging of the cocaine at trial. One picture showed a brick of cocaine open, along with its packaging. A representative brick of the cocaine in its packaging was presented as evidence. The description of the wrapping was that it was cellophane and aluminum foil secured by brown packing tape. It appears quite unlikely that the difference between the net weight of the cocaine alone, and the cocaine in its thin packaging exceeded the 5.52 kilograms that would be required in order to make a difference in Cruz's sentence. The district court did not clearly err in simply viewing the photographs of the drugs, the exemplar brick of cocaine at trial and in relying on the testimony concerning the packaging in

11

reaching a conclusion that the cocaine weighed in excess of 15 kilograms and weighed approximately 20 kilograms. This point of error is without merit.

Sentencing Court's Awareness of its Ability to Depart Downward

Cruz also argues that the district judge was unaware that he could depart downward from the Sentencing Guidelines range set forth in the PSR. A district court's mistaken belief that it does not have authority to depart downward is a reversible error of law. *See United States v. Akin*, 62 F.3d 700, 701 (5th Cir. 1995).

To support his claim that the judge was unaware of his ability to depart downward Cruz relies on the following colloquy between the judge and Cruz' Counsel regarding an objection that Cruz' criminal history was over-represented:

> THE COURT: My question to you is, are you contesting that these - - what is indicated and shown as convictions are in fact not convictions?
>
> MR. FLORES: No, Your Honor. No, I am not saying any of that.
>
> THE COURT: You are saying that they over-represent the seriousness of the matter?
>
> MR. FLORES: Yes, your honor.
>
> THE COURT: This is for criminal history situation. This is not under the scheme that is used for unlawful reentry, you know, that 16 point thing.
>
> MR. FLORES: Right. Right. Yes, sir.
>
> THE COURT: You will preserve your objection.
>
> MR. FLORES: Okay.
>
> THE COURT: To depart I would have to deviate from the impositions - -
>
> MR. FLORES: Yes, sir.

12

THE COURT:  - - of the Sentencing Guidelines criminal history range. You will preserve your objection.

It is apparent to this court that the district judge in the above colloquy was merely informing Cruz that in order to meet his request for a lesser sentence, he would have to depart from the Guidelines.  It is also apparent that the district court did not choose to do so.  Cruz points to nothing else beyond the transcript to suggest that the district judge was unaware of his ability to depart downward.  Cruz has not met his burden on this issue.  We conclude that the record does not "demonstrate that the district court misunderstood its authority." *See United States v. Garcia-Ortiz*, 310 F.3d 792, 793 (5th Cir. 2002).

Constitutionality of Guidelines §2D1.1

Cruz attacks the constitutionality of USSG § 2D1.1 in his supplemental brief.  He asserts that *Blakely v. Washington*, ___ U.S. ___, 124 S.Ct. 2531, 159 L.Ed.2d 403, 72 USLW 4546 (2004), requires a jury rather than a judge to determine the amount of an illicit drug that the defendant illegally possessed in order to apply a higher sentence.  Cruz's argument is foreclosed by this court's opinion in *United States v. Pineiro*, 377 F.3d 464 (5th Cir. 2004)(*petition for cert. filed* (July 14, 2004)(No. 04-5263)), where we held that the Sentencing Guidelines are constitutional under the Sixth Amendment and specifically that Guidelines § 2D1.1 does not offend the Sixth Amendment right to jury trial.

*Apprendi* Argument

Cruz's final argument, for the first time on appeal, is that under *Apprendi*, the provisions found at 21 U.S.C.A. § 841(a) and (b) and 21 U.S.C.A. § 960(a) and (b) are unconstitutional regardless of the fact that this court has held that Congress intended for the drug type and

13

quantity gradations of these statutes to be sentencing factors, not elements of separate offenses.

Cruz asserts that both § 841(b) and § 960(b), which set forth penalties based on drug type and quantity and which have been held to constitute sentencing factors or other elements of the offenses, conflict with *Apprendi* and cannot be severed from the substantive portions of the statutes. As couched, this argument is confusing. Apparently what Cruz is attempting to argue is that the quantity and type of drug should be submitted to a jury just as the elements of a criminal offense are submitted. Cruz acknowledges that relief on this argument is foreclosed by *United States v. Slaughter*, 238 F.3d 580 (5th Cir. 2000)(*cert. denied* 532 U.S. 1045 , 121 S.Ct. 2015 , 149 L.Ed.2d 1015 (2001), and admits that he raises the issue to preserve it for further review. There is no need for us to further address this assignment of error.

<u>CONCLUSION</u>

Based on the foregoing analysis, Cruz' conviction and judgment and his resulting sentence are AFFIRMED.