IN THE UNITED STATES COURT OF APPEALS
FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

April 28, 2008

Charles R. Fulbruge III
Clerk

No. 06-41046

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

FRANCISCO CERVANTEZ-VALERIO

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 5:05-CR-02063-1

Before JONES, Chief Judge, and BARKSDALE and STEWART, Circuit Judges.

PER CURIAM:[*]

In August 2005, Francisco Cervantez-Valerio entered the United States from Mexico, in his automobile, carrying 18 bundles of cocaine, weighing 10.5 kilograms. After the cocaine was discovered at the border, Cervantez was charged with: possession of, and conspiracy to possess, cocaine in excess of five kilograms with the intent to distribute, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§ 846, 841(a)(1), 841(b)(1)(A); and importing cocaine, in excess of five kilograms, into the United States, in violation of 18 U.S.C. § 2 and 21 U.S.C. §§

---

[*] Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

841(a)(1), 841(b)(1)(A), 846, 952(a), 960(b)(1)(A). A jury convicted him on all three counts. He was sentenced, inter alia, to 156 months' confinement.

Cervantez challenges his conviction on numerous grounds: the denial of his motion to suppress cocaine seized from his automobile, the evidence, the Government's closing argument, and the jury instructions. Only plain-error review is applied to the closing-argument and jury-instruction issues. AFFIRMED.

I.

The following facts are from the hearing on Cervantez' motion to suppress the cocaine. (The same facts, as well as some of the testimony discussed below, were also presented at trial.) In the morning of 24 August 2005, Cervantez drove across the Lincoln Juarez Bridge (Bridge 2), a port of entry from Mexico into the United States at Laredo, Texas. He was accompanied by Lydia Chavez (Cervantez' co-defendant) and her small child, who was sitting in the back seat of the automobile. Because Cervantez appeared nervous to Customs and Border Protection Officers at the primary inspection area, his vehicle was referred to the secondary inspection area.

Officer Flores was working at the secondary inspection area when Cervantez' vehicle arrived. The Officer approached the vehicle and took the referral slip, which had been placed on the windshield by the Officers at the primary inspection area and indicated Cervantez' nervousness. As the Officer approached, Cervantez exited the vehicle; he appeared jumpy and nervous.

After routine questioning of both Cervantez and Chavez, Officer Flores searched two items of luggage in the trunk of the vehicle, as well as a diaper bag in the back seat. Thereafter, a canine inspected both the interior and exterior of the vehicle but did not alert.

Officers next conducted a "seven-point inspection", which Officer Flores described at the suppression hearing as a "systematic search of the vehicle". In conducting this inspection, Officer Flores found both the interior and exterior of the vehicle to be abnormally clean for a vehicle that had been in Mexico for three weeks with a child-passenger. Based on his inspection, Officer Flores decided to conduct a mobile X-ray on the vehicle.

The report from the X-ray technician indicated an anomaly, in the form of a dark mass demonstrating density, had been located in the vehicle's dashboard area. Officer Flores took the car to an extraction area for further inspection. After showing his supervisor a photograph of the anomaly, the decision was made to continue inspection. At this time, Cervantez was escorted to the detention area, where he was handcuffed to a bench.

Multiple Officers conducted an inspection of the vehicle, in which they looked for signs of tampering with its hood, dashboard, and glove compartment. Officer Cadena, an X-ray technician, pulled back a plastic covering underneath the dashboard area and stated he thought he saw something. The Officer inserted a probe (described as a tool like an ice pick with a small fish hook used for taking samples) into the area where he noticed something. When the probe was removed, it had a white, powdery substance on it, which tested positive for cocaine. The area of the vehicle from which the cocaine sample was removed was the same area that contained the anomaly noted on the X-ray report. Thereafter, the Officers, with the help of a wrecker service, removed the dashboard and cut the frame in order to extract the cocaine.

At trial, Officer Flores testified regarding the search for, and discovery of, the cocaine in Cervantez' vehicle on 24 August 2005. In addition, Special Agent Wurst, of the United States Bureau of Immigration and Customs Enforcement,

testified that he had responded to Bridge 2 and questioned Cervantez. The Special Agent stated that, after signing a waiver of his rights, Cervantez told Agents he: was an American citizen from Aurora, Illinois; had been to Guadalajara, Mexico, visiting a relative for the previous three weeks; and had no involvement in cocaine smuggling.

Chavez, who pleaded guilty, testified at trial as follows. Before being stopped on 24 August, she and her three-year-old son had flown with Cervantez to Mexico two days earlier. The purpose of the trip was to pick up a vehicle with something illegal in it, and Cervantez wanted Chavez' son with them so they would look like a family. Cervantez offered to pay Chavez' expenses, plus $1,000.00 for accompanying him. During the drive, they were stopped by Mexican officials, who searched the vehicle. Cervantez appeared nervous during this search and relieved when the officials discovered nothing.

Chavez' testimony continued as follows. As they approached Nuevo Laredo (directly across the border from Laredo, Texas), Cervantez told her there were drugs in the vehicle and to remain calm. He also instructed Chavez to get in the front seat (she had been in the back seat with her child) as they approached Bridge 2. Cervantez told Chavez not to tell the Officers they had flown to Mexico together. Cervantez appeared nervous and was smoking cigarettes. When their vehicle was sent to be X-rayed by the Officers, Cervantez put his hands on his head and told Chavez: "See you in a couple of years".

An American Airlines representative testified that records showed reservations had been made for Cervantez, Chavez, and another passenger to fly from Chicago to Guadalajara, via Dallas, on 22-23 August 2005. The records also showed all three passengers had checked in for the flights but that one of the passengers missed the flight to Dallas. A representative from Mexicana

4

Airlines testified that Cervantez flew from Guadalajara to Chicago on 1 August 2005.

II.

Cervantez challenges: (1) the search of his vehicle; (2) the sufficiency of the evidence as to each count; (3) comments made by the Government in closing argument; and (4) one of the jury instructions. Each claim fails.

A.

Although recognizing the great latitude given officials for conducting searches at the border, Cervantez maintains, nevertheless, that the search of his vehicle violated the Fourth Amendment because: (1) notwithstanding cocaine's being found in his vehicle, the continued extensive search after two hours of negative results was unreasonable; and (2) the insertion of a probe into the dashboard area of his vehicle, without reasonable suspicion to believe criminal activity would be found, was an unreasonable search. Cervantez claims, therefore, that the district court erred in denying his motion to suppress the cocaine discovered in his vehicle. In reviewing denial of a suppression motion, the district court's factual findings are reviewed for clear error; its legal conclusions, de novo. E.g., United States v. Mata, 517 F.3d 279, 284 (5th Cir. 2008).

1.

For Fourth Amendment purposes, "searches made at the border, pursuant to the longstanding right of the sovereign to protect itself by stopping and examining persons and property crossing into this country, are reasonable simply by virtue of the fact that they occur at the border". United States v.

Flores-Montano, 541 U.S. 149, 152-53 (2004) (quoting United States v. Ramsey, 431 U.S. 606, 616 (1977)) (internal quotation marks omitted). Therefore, searches and seizures may be conducted at the border absent probable cause or a warrant. Id. at 153.

Cervantez' contention that the search of his vehicle became unreasonable merely because the Officers searched unsuccessfully for contraband for roughly two hours fails. As Flores-Montano makes clear, the Fourth Amendment does not shield individuals from "inconvenience or delay at the international border". Id. at 155. n.3 ("We think it clear that delays of one to two hours at international borders are to be expected.").

2.

Cervantez also maintains the Government impermissibly used a probe to determine there was cocaine behind his dashboard, claiming the Officers had no reasonable suspicion to believe they would uncover contraband. This claim, however, is similarly disposed of by Flores-Montano.

There, the Government discovered contraband during a border search by removing and disassembling a vehicle's gas tank. Id. at 151. In upholding the constitutionality of the search, the Court held, inter alia, that the defendant's protected property interest under the Fourth Amendment, see Soldal v. Cook County, III., 506 U.S. 56, 62 (1992), was not violated because the record did not show the "removal, disassembly, and reassembly of the fuel tank . . . resulted in serious damage to, or destruction of, the property". Flores-Montano, 541 U.S. at 154.

As Cervantez points out, Flores-Montano specifically declined to address "whether, and under what circumstances, a border search might be deemed

unreasonable because of the particularly offensive manner in which it is carried out". Id. at 155 n.2 (internal citation and quotation marks omitted). In reserving that question, the Court referred to a series of circuit court cases, known as the "drilling cases", which required the Government to have reasonable suspicion before drilling into an individual's property in search of contraband. Id.; see, e.g., United States v. Rivas, 157 F.3d 364, 367 (5th Cir. 1998) (holding drilling into body of trailer required reasonable suspicion).

Because the Supreme Court declined to address the constitutionality of "drilling" in the absence of reasonable suspicion, Cervantez maintains the Officers used the probe impermissibly, without reasonable suspicion, to discover the cocaine. This contention fails because Officers did not "drill" through Cervantez' property. Rather, Officer Cadena merely pulled back a section of the plastic covering underneath the dashboard area and used the probe to reach the contraband. Such conduct did not result in the "serious damage to, or destruction of, the property". Flores-Montano, 541 U.S. at 154. Although the Officers ultimately extracted the entire cache of cocaine by removing the dashboard and cutting the frame, such destructive methods were not used until after the cocaine had been discovered using the probe.

Therefore, the Government was entitled to conduct, without reasonable suspicion, the inspection of the area behind Cervantez' dashboard. In any event, unlike in Flores-Montano, the Government does not disclaim reliance on reasonable suspicion. Id. at 151. Indeed, the Officers had reasonable suspicion to believe criminal contraband was behind the dashboard, based on Cervantez' nervous appearance, the abnormally clean car, and the X-ray detection of an anomaly in the dashboard area of the car.

B.

In maintaining there is insufficient evidence to support his conviction on each of the three counts for which he was convicted, Cervantez contends the evidence does not establish his knowledge that cocaine was inside his vehicle, which is a necessary element to support a conviction for the possession, conspiracy, and importation charges. See United States v. Pando Franco, 503 F.3d 389, 394 (5th Cir. 2007) (importation), cert. denied, 76 U.S.L.W. 3393 (U.S. 14 April 2008) (No. 07-893); United States v. Valdez, 453 F.3d 252, 256-57 (5th Cir.) (conspiracy to possess and distribute a controlled substance), cert. denied, 127 S. Ct. 456 (2006); United States v. Infante, 404 F.3d 376, 385 (5th Cir. 2005) (possession with intent to distribute).

Cervantez properly moved for judgment of acquittal at trial. Therefore, "we decide whether the evidence is sufficient by 'viewing the evidence and the inferences that may be drawn from it in the light most favorable to the verdict' and determining whether 'a rational jury could have found the essential elements of the offenses beyond a reasonable doubt'". Valdez, 453 F.3d at 256 (quoting United States v. Pruneda-Gonzalez, 953 F.2d 190, 193 (5th Cir. 1992)).

Cervantez contends: Chavez was the only witness who could testify about his knowing drugs were in the vehicle; and her testimony was filled with "too many inconsistencies and too many things that do not fit in with normal human behavior" to prove his requisite knowledge beyond a reasonable doubt. The uncorroborated testimony of a co-conspirator, however, may be used to convict a defendant, so long as the co-conspirator's testimony is not incredible. Id. at 257. "Testimony is incredible as a matter of law only if it relates to facts that the witness could not possibly have observed or to events which could not have

occurred under the laws of nature." Id. (quoting United States v. Bermea, 30 F.3d 1539, 1552 (5th Cir. 1994)) (internal quotation marks omitted).

Cervantez has not demonstrated that Chavez' testimony was incredible as a matter of law—far from it. He alleges no basis for concluding Chavez could not have observed facts demonstrating Cervantez' knowledge of the cocaine, nor does he assert that the events she described could not have occurred under the laws of nature. Cervantez points out inconsistencies in Chavez' testimony; but, of course, those inconsistencies were for the jury to resolve. "Not only is a jury free to choose among reasonable constructions of the evidence, it is afforded the latitude to choose to believe part of what a witness says without believing all of that witness's testimony." Pruneda-Gonzalez, 953 F.2d at 196 n.9 (internal citations and quotation marks omitted). Cervantez fails to establish, therefore, that the evidence was insufficient to support the jury's finding, beyond a reasonable doubt, that he knew the cocaine was in his vehicle.

C.

Cervantez next asserts the Government made statements during its closing argument which were not supported by the evidence and improperly shifted the burden of proof to Cervantez. Arguably, this issue is not adequately briefed.

In any event, because Cervantez did not object to the belatedly-challenged comments, our review is only for plain error. Therefore, Cervantez must demonstrate: (1) error; (2) that was plain (clear or obvious); and (3) that affects his substantial rights. E.g., United States v. Price, 516 F.3d 285, 287 (5th Cir. 2008). Even if he does so, generally, we will exercise our discretion to correct the plain error only if it "seriously affects the fairness, integrity, or public reputation

of judicial proceedings". United States v. Garza-Lopez, 410 F.3d 268, 272 (5th Cir. 2005) (internal quotation marks omitted).

### 1.

Cervantez maintains the Government impermissibly shifted the burden of proof by stating: "Again, [Chavez'] testimony that she was in that vehicle, is corroborated by the other testimony that has been presented. And the part of it that cannot be corroborated is the part about [Cervantez'] saying [after the search] that he don't [sic] know there was any cocaine in there". The Goverment contends that, in accordance with the district court's jury instruction regarding accomplice testimony, it was attempting to demonstrate Chavez' testimony was supported and corroborated.

Even assuming arguendo the statement was improper, the jury was repeatedly informed of the correct burden of proof during closing argument and when it was instructed. This negates any claim that Cervantez' substantial rights were affected. See United States v. Andrews, 22 F.3d 1328, 1344 (5th Cir. 1994) (holding proper instruction on burden of proof by district court negated a finding of plain error). Cervantez, therefore, has not shown the Government plainly erred in this closing-argument comment.

### 2.

For his second belated challenge to the Government's closing argument, Cervantez asserts it repeatedly stated he was a trusted member of a drug-smuggling organization, despite such evidence not having been presented at trial. Specifically, in its rebuttal closing argument, the Government asked the jury to infer, based on the value of the cocaine and the complexity of its storage

in the vehicle, that Cervantez was trusted by those who loaded the vehicle. For example, the Government began its rebuttal closing argument by stating:

> I'm going to introduce you to a concept here as it will be talked about. It's been underlying throughout this entire case. That is two concepts, trust and value. Okay? What do I mean by that? The people that loaded that car went through all that trouble to load that car. We know it was loaded that way. The complexity of the operation, they don't go through all this trouble and put this – I'm showing you Government Exhibit 6 – in the hands of someone they do not trust.

Cervantez does not show an error that is clear or obvious. The Government asked the jury to make a logical inference based upon evidence offered at trial regarding, inter alia, the amount of cocaine and the method by which it was secreted in the vehicle. See United States v. Javier Cruz, 388 F.3d 150, 156 (5th Cir. 2004) (holding jury could infer defendant would not have been entrusted with such large quantities of drugs if he had no knowledge of them), vacated on other grounds, Cruz v. United States, 544 U.S. 1013 (2005); United States v. Villarreal, 324 F.3d 319, 324 (5th Cir. 2003) (holding jury could infer defendant would not have been entrusted with $300,000 of marijuana unless he was part of the drug-trafficking scheme). There was no plain error.

### D.

For his last contention, Cervantez asserts the district court erred by instructing the jury that "[t]he fact that an accomplice [Chavez] has entered a plea of guilty to the offense charged is not evidence, in and of itself, of the guilt of any other person". (Emphasis added.) He contends the phrase "in and of itself" created the impression that Chavez' admission of guilt, taken with other

facts, was evidence of Cervantez' guilt. Because no objection was made to the jury instruction, this issue is also reviewed only for plain error. E.g., United States v. Fuchs, 467 F.3d 889, 900 (5th Cir. 2006), cert. denied, 127 S. Ct. 1502 (2007).

In support of this contention, Cervantez points out that our circuit, as well as four others, have abandoned the "in and of itself" language. Indeed, the Note following Pattern Jury Instruction 1.15 discusses the deletion of that language:

> The phrase "in and of itself" has been deleted from the last sentence of the 1997 version of this instruction. The Fifth Circuit and Eleventh Circuit have approved that language. United States v. Pettigrew, 77 F.3d 1500, 1518 (5th Cir. 1996); United States v. Prieto, 232 F.3d 816, 823 (11th Cir. 2000). However, the First Circuit discouraged as "potentially misleading" the use of such "in and of itself" language. United States v. Gonzalez-Gonzalez, 136 F.3d 6, 10-11 (1st Cir. 1998). Pattern jury instructions for the Sixth, Seventh, Eighth, and Ninth Circuits do not contain the "in and of itself" language.

FIFTH CIRCUIT PATTERN JURY INSTRUCTION: CRIMINAL § 1.15 (Note).

Although the phrase "in and of itself" was removed in the 2001 version of Pattern Jury Instruction 1.15, FIFTH CIRCUIT PATTERN JURY INSTRUCTION: CRIMINAL § 1.15, the above-quoted Note clearly states such language, although deleted, to have been acceptable in our circuit. Indeed, our court subsequently upheld instructions with the "in and of itself" language. See United States v. Valuck, 286 F.3d 221, 228 (5th Cir. 2002) (citing United States v. Abravaya, 616 F.2d 250, 251-52 (5th Cir. 1980)). Again, there was no plain error.

### III.

For the foregoing reasons, the judgment is AFFIRMED.