# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**F I L E D**

October 9, 2009

Charles R. Fulbruge III
Clerk

No. 08-40909

UNITED STATES OF AMERICA

Plaintiff-Appellee

v.

RAUL MEDRANO BETANCOURT

Defendant-Appellant

Appeal from the United States District Court
for the Southern District of Texas

Before JONES, Chief Judge, and PRADO and HAYNES, Circuit Judges.

PRADO, Circuit Judge:

Raul Medrano Betancourt, a long-distance truck driver, was found guilty of possessing more than 100 kilograms of marijuana with intent to distribute, under 21 U.S.C. § 841(a)(1) and (b)(1)(B). On appeal, Betancourt argues that his conviction should be overturned for two reasons. First, he argues that the district court's voluntariness instruction to the jury was improper. Second, he argues that under *Flores-Figueroa v. United States*, 129 S. Ct. 1886 (2009), the government failed to prove beyond a reasonable doubt that Betancourt knew the amount and quantity of drugs in his trailer.

Neither of Betancourt's arguments has merit. Thus, we AFFIRM his conviction.

## I. BACKGROUND

Betancourt performed contract hauls on an as-needed basis. On one of these hauls, Betancourt supposedly was carrying a load of pineapples. But when Border Patrol agents stopped him at a checkpoint, they found 834.3 kilograms (about 1800 pounds) of marijuana in his trailer. At first, Betancourt denied knowing about the marijuana. Later, when agents confronted him with a forged bill of lading that bore his signature, he admitted knowing marijuana was in the trailer. He was charged with possession of more than 100 kilograms of marijuana with intent to distribute, under § 841(a)(1) and (b)(1)(B).

Betancourt's first trial ended in a mistrial. During his second trial, the district court issued oral instructions to the jury. In part, the district court said:

> In determining whether [Betancourt's] statement [to law enforcement officers] was knowingly and voluntarily made, consider the evidence concerning such a statement with caution and great care. You should give such weight to the statement as you feel it deserves under all the circumstances. This statement is properly before you. It has met the standards for admissibility in evidence before you. You're not to concern yourself whether or not the *Miranda* warnings are the correct warnings in accordance with the laws of the Supreme Court. But, you should consider the weight and statement of it as you feel it deserves under the circumstances. You may consider in that regard such factors as age of the defendant, training, education, sex, occupation, physical and mental condition of the defendant, his treatment while under interrogation, and all the other circumstances in evidence that surrounded the making of any such statement.

Before sending the jury to deliberate, the district court asked the parties if they had any objections, corrections, or additions to the jury instructions. Betancourt's counsel did not object to the instructions, either at this time or any other until the appeal.

The jury found Betancourt guilty, and the district court sentenced him to 90 months' imprisonment.

## II. ANALYSIS

## A.   The District Court's Oral Instructions to the Jury

### 1.   Standard of review

Generally, we review jury instructions for abuse of discretion and harmless error. *United States v. Skilling*, 554 F.3d 529, 547 (5th Cir. 2009). But when a defendant fails to object to jury instructions, our review is for plain error:

> A party who objects to any portion of the instructions or to a failure to give a requested instruction must inform the court of the specific objection and the grounds for the objection before the jury retires to deliberate. An opportunity must be given to object out of the jury's hearing and, on request, out of the jury's presence. Failure to object in accordance with this rule precludes appellate review, except as permitted under Rule 52(b).

FED. R. CRIM. P. 30(d).

Betancourt argues that we should review the district court's voluntariness instruction for abuse of discretion. Betancourt acknowledges that he did not object to the voluntariness instruction at trial. But Betancourt asserts that the district court did not give him the proper opportunity to object. We disagree.

To support his argument, Betancourt cites *United States v. Fernandez*, 456 F.2d 638 (2d Cir. 1972). But *Fernandez* is distinguishable from the case at hand. In *Fernandez*, the district court denied Fernandez's explicit request for permission to object to the jury instructions out of the jury's presence, instead requiring Fernandez to make his objections in open court. *Id*. at 644. Here, Betancourt did not make such a request. The district court gave Betancourt an opportunity to object out of the jury's hearing. After reading the jury instructions, the district court asked Betancourt if he had any objections. Betancourt did not say that he did. Because Betancourt did not ask for an opportunity to object out of the jury's presence, the district court was not required to give him one.

Betancourt seems to be arguing that the district court should have given him an opportunity to object out of the jury's presence *sua sponte*. But the plain language of the statute says that the district court need only give counsel an opportunity to object out of the jury's presence "on request." Betancourt did not make this request. Accordingly, we review the district court's instructions for plain error.

Under plain error review, we must determine whether the district court committed an "'error,'" whether that error is "'plain,'" and whether the error "'affect[s] substantial rights.'" *United States v. Reyna*, 358 F.3d 344, 350 (5th Cir. 2004) (en banc) (quoting *United States v. Olano*, 507 U.S. 725, 732 (1993)) (alteration in original); *see also* FED. R. CRIM. P. 52(b). If these three elements are met, then we can use our discretion to correct the error only if it "'seriously affect[s] the fairness, integrity or public reputation of judicial proceedings.'" *Id.* (quoting *Olano*, 507 U.S. at 732) (alteration in original).

## 2. Whether the instructions were plain error

In a federal criminal prosecution, the trial court makes a preliminary determination, outside the presence of the jury, of the voluntariness of any alleged confession. 18 U.S.C. § 3501(a). If the trial court determines that the confession was voluntary, then the confession should be admitted in evidence. *Id.* The trial court should "permit the jury to hear relevant evidence on the issue of voluntariness" and should "instruct the jury to give such weight to the confession as the jury feels it deserves under all the circumstances." *Id.* The trial court should permit "the confession and the question of voluntariness to go to the jury . . . without indicating [the court's own] evaluation to the jury." *United States v. Harper*, 432 F.2d 100, 102 (5th Cir. 1970).

Betancourt argues that the district court impermissibly told the jury that it had decided Betancourt's confession was voluntary. To determine whether

Betancourt is correct, we must look at the language the district court used in its instruction.

The district court modeled its instruction after Fifth Circuit Pattern Jury Instruction 1.26 (2001), which states:

> In determining whether any statement . . . was knowingly and voluntarily made, you should consider the evidence concerning such a statement with caution and great care, and should give such weight to the statement as you feel it deserves under all the circumstances.
>
> You may consider in that regard such factors as the age, sex, training, education, occupation, and physical and mental condition of the defendant, his treatment while under interrogation, and all the other circumstances in evidence surrounding the making of the statement.

Betancourt argues that the district court erred when it added the following language to Pattern Jury Instruction 1.26: "This statement is properly before you. It has met the standards for admissibility in evidence before you. You're not to concern yourself whether or not the *Miranda* warnings are the correct warnings in accordance with the laws of the Supreme Court."

When reviewing challenged language in a jury instruction, we do not look at the language in isolation. *United States v. Elashyi*, 554 F.3d 480, 504 (5th Cir. 2008). Instead, "[w]e consider whether the instruction, taken as a whole, 'is a correct statement of the law and whether it clearly instructs jurors as to the principles of law applicable to the factual issues confronting them.'" *Id.* (quoting *United States v. Freeman*, 434 F.3d 369, 377 (5th Cir. 2005)).

In this case, immediately before the challenged language, the district court told the jury to use great care when determining the voluntariness of Betancourt's confession and to consider the relevant circumstances before deciding how much weight to give the confession. Further, immediately after the challenged language, the district court reiterated that the jury should be careful

to take into account a wide range of factors when determining whether the confession was voluntary. Thus, the challenged language fell between two other statements which correctly said that the district court had not determined whether the confession was voluntary and that it was the jury's job to determine voluntariness. Taken as a whole, the instruction is a correct statement of the law and "'clearly instructs jurors as to the principles of law applicable to the factual issues confronting them.'" *Elashyi*, 554 F.3d at 504 (quoting *Freeman*, 434 F.3d at 377). The district court did not err.

In addition, the challenged language itself was not a misstatement of the law. First, the district court said, "This statement is properly before you. It has met the standards for admissibility in evidence before you." Betancourt argues that by using this language, the district court effectively told the jury that the district court had decided Betancourt's confession was voluntary. We disagree. In fact, this language does not address the roles of the court and the jury in determining voluntariness. It simply says that the confession was properly admitted as evidence at trial, in accordance with § 3501(a).

Second, the district court said, "You're not to concern yourself whether or not the *Miranda* warnings are the correct warnings in accordance with the laws of the Supreme Court." Betancourt argues that by using this language, the district court suggested to the jury that Betancourt's confession complied with *Miranda* and therefore was voluntary. This language does not suggest that Betancourt's confession was voluntary. Border Patrol agents testified that they read Betancourt his *Miranda* rights, and a copy of Betancourt's *Miranda* Warning Form was admitted at trial. Thus, it is likely that the district court was referring to Betancourt's *Miranda* warnings. Certainly, there is no indication that the district court was referring to the voluntariness of Betancourt's confession.

## B.    The Effect of *Flores-Figueroa*

In his initial brief, Betancourt argued that the government failed to prove beyond a reasonable doubt that he knew the type and quantity of drugs in the trailer. At that time, Betancourt acknowledged that *United States v. Gamez-Gonzalez*, 319 F.3d 695 (5th Cir. 2003), foreclosed his argument. But in his supplemental letter brief, Betancourt argues that the Supreme Court's recent decision in *Flores-Figueroa*, 129 S. Ct. 1886, overturned the holding in *Gamez-Gonzalez* and necessitates reversal of his conviction. Betancourt interprets *Flores-Figueroa* too aggressively. *Flores-Figueroa* does not overturn *Gamez-Gonzalez*.

In *Gamez-Gonzalez*, Gamez was convicted of possession of a controlled substance with intent to distribute, in violation of § 841(a)(1) and (b)(1)(A). 319 F.3d at 697. On appeal, we addressed "whether the Government was required to prove Gamez's *mens rea* regarding the type and quantity of the controlled substance." *Id.* In making our determination, we looked at the language of § 841:

> (a)  Unlawful acts. Except as authorized by this title, it shall be unlawful for any person knowingly or intentionally –
> > (1) to . . . possess with intent to manufacture, distribute, or dispense, a controlled substance; or
> > (2) to create . . . a counterfeit substance.
> (b) Penalties. . . . [A]ny person who violates subsection (a) of this section shall be sentenced as follows:
> > (1)
> > > (A) In the case of a violation of subsection (a) of this section involving – . . .
> > > > (vii) 1000 kilograms or more of . . . marihuana . . .
> such person shall be sentenced to a term of imprisonment which may not be less than 10 years or more than life . . . .

We noted that "Gamez asserts that the § 841(a) 'knowingly or intentionally' language, required for the act to be unlawful, modifies all of the elements of § 841, including drug type and quantity addressed in § 841(b) (penalties)." *Id.* at 700 (quotation omitted). We explained that Gamez was mistaken: "subsection (b) does not make Gamez's *knowledge* of drug type or quantity an element of the § 841 offense." *Id.* (emphasis in original). Instead, the penalty is "based solely on the type and quantity involved in the unlawful act." *Id.* (emphasis omitted). We concluded that under § 841, "the knowledge required for the act to be unlawful does *not* apply to the penalty." *Id.* (emphasis in original).

Betancourt argues that *Flores-Figueroa* overturned *Gamez-Gonzalez*. In *Flores-Figueroa*, Flores was convicted of "knowingly . . . possess[ing] . . . without lawful authority, a means of identification of another person" under 18 U.S.C. § 1028A(a)(1). *Flores-Figueroa*, 129 S. Ct. at 1888-89. The issue before the Supreme Court was "whether the statute requires the Government to show that the defendant *knew* that the 'means of identification' he or she unlawfully . . . possessed . . . belonged to 'another person.'" *Id.* at 1888 (emphasis in original). The Court reasoned that "[a]s a matter of ordinary English grammar, it seems natural to read the statute's word 'knowingly' as applying to all the subsequently listed elements of the crime." *Id.* at 1890. Further, "courts ordinarily read a phrase in a criminal statute that introduces the elements of a crime with the word 'knowingly' as applying that word to each element." *Id.* at 1891. Accordingly, the Court concluded that "§ 1028A(a)(1) requires the Government to show that the defendant knew that the means of identification at issue belonged to another person." *Id.* at 1894.

Betancourt argues that the statutory analysis described in *Flores-Figueroa* applies equally to the language of § 841. But the structure of § 841 is different from that of § 1028A(a)(1). In *Flores-Figueroa*, the Court's analysis of

§ 1028A(a)(1) involved a single subsection. In contrast, in *Gamez-Gonzalez* our analysis of § 841 involved two separate subsections. Unlike in § 1028A(a)(1), where it would be "natural" to apply the word "knowingly" to all "subsequently listed elements," *id.* at 1890, in § 841 it would not be natural to apply the word "knowingly" used in subsection (a) to language used in subsection (b), especially because a period separates the two subsections.

In an effort to address this flaw in his argument, Betancourt points to *United States v. X-Citement Video, Inc.*, 513 U.S. 64 (1994). In that case, the Court interpreted a statute that penalized:

> (a) Any person who --
> > (1) knowingly transports or ships . . . any visual depiction, if --
> > > (A) the producing of such visual depiction involves the use of a minor engaging in sexually explicit conduct . . . ."

18 U.S.C. § 2252(a)(1); *X-Citement Video*, 513 U.S. at 68. The Court concluded that the adverb "knowingly" applied not only to subsection (a)(1), but also to sub-subsection (a)(1)(A). *X-Citement Video*, 513 U.S. at 78.

Betancourt is correct that the statutory language in *X-Citement Video* is closer to § 841 than the statutory language in *Flores-Figueroa*, but crucial differences remain. First, the *X-Citement Video* Court found that the modifier "knowingly," which appeared in a subsection, also applied to a sub-subsection that stemmed directly from that subsection. Here, Betancourt asks us to apply "knowingly," which appears in one subsection, to a different subsection entirely. Further, in *X-Citement Video* the subsection and the sub-subsection formed one long (if interrupted) sentence. Here, a period separates the two subsections. For both of these reasons, it would be natural to apply the modifier "knowingly" to the language at issue in *X-Citement Video*, but the same cannot be said of the language at issue here. A common-sense, natural reading of § 841 leads to the

inevitable conclusion that Congress did not intend for the word "knowingly" in § 841(a) to modify language in § 841(b).

## III.  CONCLUSION

The district court's oral instructions to the jury were not improper.  In addition, *Flores-Figueroa* did not overturn *Gamez-Gonzalez,* and the Government did not need to prove beyond a reasonable doubt that Betancourt knew the type and quantity of drugs in his trailer.

Accordingly, we AFFIRM Betancourt's conviction.