# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14–41298

United States Court of Appeals
Fifth Circuit

**FILED**
December 11, 2015

Lyle W. Cayce
Clerk

UNITED STATES,

Plaintiff–Appellee,

versus

ALEXANDER LORENZO GIL-CRUZ,

Defendant–Appellant.

Appeal from the United States District Court
for the Southern District of Texas

Before HIGGINBOTHAM, JONES, and SMITH, Circuit Judges.
JERRY E. SMITH, Circuit Judge:

Alexander Gil-Cruz was convicted of importing and possessing a controlled substance with intent to distribute in violation of 21 U.S.C. §§ 841 and 960. He claims that the district court erred by admitting photographs found on his cellphone at the time of arrest that showed an altar he had built. He also contends that there was insufficient evidence to show that he had knowledge of the type and quantity of drugs he was carrying. Because any error in the admission of the photos was harmless, and because the second theory is

No. 14–41298

foreclosed by *United States v. Betancourt*, 586 F.3d 303 (5th Cir. 2009), we affirm.

## I.

Gil-Cruz was indicted for (1) conspiracy to import 500 grams or more of methamphetamine, (2) importation of 500 grams or more of methamphetamine, (3) conspiracy to possess with intent to distribute 500 grams or more of methamphetamine, and (4) possession with intent to distribute 500 grams or more of methamphetamine, in violation of 21 U.S.C. §§ 846, 841(a)(1) and (b)(1)(A)(viii), 952(a), 960(a)(1) and (b)(1)(H), and 963. On January 7, 2012, he entered from Mexico in a silver Ford Focus, but border officers discovered 10.16 kilograms of crystal methamphetamine in a hidden compartment in the firewall of his car.

Before trial, the government indicated that it planned to introduce three photos from a cellphone that Gil-Cruz had with him at the time of arrest. The photos depicted an altar and Gil-Cruz preparing the altar with a chicken that he had sacrificed. A set of car keys appeared on the front right-hand side of the altar. The government urged that the altar provided circumstantial evidence that Gil-Cruz sought supernatural protection for the car and thus indicated that Gil-Cruz knew he was importing methamphetamine. Despite Gil-Cruz's objection, the three photographs were admitted into evidence during the government's cross-examination of Gil-Cruz. Gil-Cruz contended that it was a coincidence that the keys were placed on the altar when the photos were taken. As part of its closing arguments, the government implied that the altar provided evidence that Gil-Cruz knew about the drugs hidden in his car, by describing the altar with the keys as a "back-up plan."

The jury convicted on counts 2 and 4 after the court had granted Gil-Cruz's motion for a judgment of acquittal as to counts 1 and 3 because of

2

No. 14–41298

insufficient evidence of conspiracy. Gil-Cruz also had claimed that there was insufficient evidence that he had knowledge of the drugs inside his vehicle, but the court rejected his request for acquittal on counts 2 and 4.

## II.

Gil-Cruz maintains that the admission of the photographs violated Federal Rules of Evidence 401, 404, 403, and 610. We need not evaluate those contentions, because any error was harmless.

## A.

"We review evidentiary rulings under a deferential abuse-of-discretion standard."[1] Any error is reviewed for harmlessness.[2] Indeed, "[w]e reverse a judgment based on an erroneous evidentiary ruling only if that ruling 'affected the substantial rights of the parties.'"[3] "An error affects substantial rights if there is a reasonable probability that the improperly admitted evidence contributed to the conviction." *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007).

## B.

There was significant evidence to indicate that Gil-Cruz knew he was carrying drugs and thus to support the conviction, apart from the admission of the photographs. There is no dispute that Gil-Cruz owned the silver Ford Focus in which drugs were discovered. "Knowledge of the presence of narcotics often may be inferred from the exercise of control over the vehicle in

---

[1] *Aransas Project v. Shaw*, 775 F.3d 641, 655 (5th Cir. 2014) (per curiam), *cert. denied*, 135 S. Ct. 2859 (2015).

[2] *Id.*

[3] *Id.* (quoting *Stover v. Hattiesburg Pub. Sch. Dist.,* 549 F.3d 985, 992 (5th Cir. 2008)); *see also* FED. R. CRIM. P. 52(a) ("Any error, defect, irregularity, or variance that does not affect substantial rights must be disregarded.").

No. 14–41298

which the illegal drugs are concealed." *United States v. Resio-Trejo*, 45 F.3d 907, 911 (5th Cir. 1995). Nevertheless, in secret-compartment cases we have required additional circumstantial evidence to support knowledge because of the possibility of that a third party could conceal drugs in the vehicle of an unwitting defendant. *Id.*[4]

There is such additional evidence: Gil-Cruz made multiple trips to Mexico within a short time, crossing the border on December 12 and January 6 before his trip on January 7. He drove two different cars with hidden compartments—on December 12, officers discovered an empty compartment in the firewall of a gold Ford Focus that Gil-Cruz was driving, and Gil-Cruz drove the silver Focus, which was found to have a hidden firewall compartment on January 7.[5]

The alterations to both cars appeared to be recent. Notably, the customs officer found no signs of tampering on Gil-Cruz's silver Focus on January 6, even though there was a lookout advisory in the Treasury Enforcement Communication System regarding Gil-Cruz's driving of a car with a hidden compartment.[6] In contrast, on January 7, the officer immediately observed

---

[4] *See also United States v. Vasquez*, 677 F.3d 685, 694 (5th Cir. 2012) (quoting *United States v. Pennington,* 20 F.3d 593, 598 (5th Cir. 1994)).

[5] Additionally, a prior similar act can be relevant, in some cases, to the issue of knowledge. *See* FED. R. EVID. 404(b) (stating that other-act evidence may be admissible to demonstrate knowledge). The similarities between the two incidents are striking—Gil-Cruz drove two different Ford Focuses, with the same hidden compartment in the firewall, across the border. He was the only person in the gold Focus. Therefore, the similarities between his two crossings support an inference of knowledge. In the unpublished (and therefore non-precedential) case of *United States v. Garcia-Garcia*, 324 F. App'x 286 (5th Cir. 2009) (per curiam), we reversed under similar circumstances, except that the cars were of different types with different modifications, and in any event, the issue there was admissibility, which is not challenged here, and the defendant was only a passenger.

[6] The advisory was entered after Gil-Cruz was found driving the gold Focus with a hidden firewall compartment on December 12.

No. 14–41298

tampering with the fender, so the alterations appear to have been made between the two crossings.  Evidence of recent alterations creating a secret compartment in a vehicle used to transport drugs, when coupled with possession of the vehicle, supports a finding of knowledge.  *See Resio-Trejo*, 45 F.3d at 912–13.

Gil-Cruz appeared to have access to significant amounts of money—he had a picture of stacks of cash on his phone during the December 12 crossing, and despite serving as a Walmart employee and field worker, he was able to buy several cars, including a BMW, within a month.[7]  When he was stopped at the border on January 7, Gil-Cruz was carrying narcotics worth about $286,000.  As we stated in *Vasquez*, 677 F.3d at 695, "[t]he high value of concealed narcotics can also support knowledge."

Gil-Cruz was unable to recall the name of the girl he allegedly went to Mexico to meet on January 7, with whom he supposedly had spent six hours at the mall.[8]  The jury easily could have concluded that it was implausible that someone would steal his car, take it apart, and hide large quantities of narcotics in it while Gil-Cruz was at the mall, especially given that he claimed that he saw no signs of tampering when he returned to the parking lot.  "[A]n implausible story advanced by a defendant to explain his actions can provide

---

[7] Although there is some conflict in the record regarding whether Gil-Cruz owned the gold Focus, it appears that he bought it but returned it because of engine problems.  It is undisputed that he next bought a BMW.  After receiving a refund from the return of the first Focus, he bought the silver one.  *Cf. United States v. Ortega Reyna*, 148 F.3d 540, 547 (5th Cir. 1998) (per curiam) ("Considering Ortega's possession of the cash and his description of his employment, a jury might well question his ability to accumulate this much cash while supporting his family with odd jobs."), *abrogated on other grounds by United States v. Vargas-Ocampo*, 747 F.3d 299 (5th Cir.), *cert. denied*, 135 S. Ct. 170 (2014).

[8] *Cf. United States v. Molina-Iguado*, 894 F.2d 1452, 1456–57 (5th Cir. 1990) (explaining that the defendant's inability to name the boyfriend who supposedly borrowed her car while she was in Mexico supported a finding that she knew of the drugs hidden in it).

No. 14–41298

circumstantial evidence from which a jury might infer the defendant's guilty knowledge."[9]

The jury also heard testimony regarding Gil-Cruz's excessively friendly behavior during the January 6 crossing—he appeared to be attempting to curry favor with the border officers and volunteered information regarding illicit activity with credit cards. Gil-Cruz continued to talk with a border officer after he was told he could leave, which is not typical. And he was friendly with officers on January 7. In contrast, during the December 12 crossing, Gil-Cruz appeared nervous and did not make eye contact.

Considered as a totality, this evidence provides sufficient support for the jury's finding that Gil-Cruz knew he was carrying drugs. Although Gil-Cruz posits that the evidence is merely circumstantial, we rely on circumstantial evidence to demonstrate knowledge in these types of drug-smuggling cases. *See Vasquez*, 677 F.3d at 694–95; *Resio-Trejo*, 45 F.3d at 911. Indeed, "[d]irect and circumstantial evidence are given equal weight."[10] Thus, even if Gil-Cruz were correct that it was error to admit the photographs of the altar, any error was harmless.

## III.

Gil-Cruz reasons, using *Flores-Figueroa v. United States*, 556 U.S. 646 (2009), that under 21 U.S.C. §§ 841 and 960, the government was required to prove that he had knowledge not only that he was carrying drugs but also of their type and quantity. As Gil-Cruz concedes, however, that theory is

---

[9] *United States v. Ramos-Garcia*, 184 F.3d 463, 466 (5th Cir. 1999); *see also Resio-Trejo*, 45 F.3d at 913 (observing that the defendant's alternative explanation that someone took his truck, constructed secret compartments in it, and filled them with marihuana without his knowledge was "incredulous" [*sic*, presumably should have read "incredible"]).

[10] *United States v. Dien Duc Huynh*, 246 F.3d 734, 742 (5th Cir. 2001) (quoting *United States v. Mendoza*, 226 F.3d 340, 343 (5th Cir. 2000)).

No. 14–41298

foreclosed by *Betancourt*, 586 F.3d at 308–09, in which we construed § 841 in the wake of *Flores-Figueroa* and determined that "knowingly," as used in § 841(a), does not apply to type and quantity determinations under § 841(b). With regard to Gil-Cruz's conviction under § 841, *Betancourt* is directly controlling.

*Betancourt* also directs our disposition of Gil-Cruz's claim regarding § 960. As Gil-Cruz notes, the structure of § 960 is virtually identical to that of § 841. In both, subsection (a) makes it a crime "knowingly or intentionally" either to "possess" (§ 841(a)) or "distribute" (§ 960(a)) "a controlled substance," and subsection (b) lists penalties. In both, a period separates subsections (a) and (b). Thus, under *Betancourt*, "knowingly," as used in § 960(a), cannot apply to type and quantity determinations in § 960(b).[11] Therefore, the conviction under § 960 stands.

AFFIRMED.

---

[11] *See Betancourt*, 586 F.3d at 309 (explaining the significance of having two separate subsections separated by a period).