# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 14-50846

United States Court of Appeals
Fifth Circuit

**FILED**
January 5, 2016

Lyle W. Cayce
Clerk

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

JESUS GUADALUPE RAMOS-RODRIGUEZ,

Defendant - Appellant

Appeal from the United States District Court
for the Western District of Texas

Before JOLLY, JONES, and BENAVIDES, Circuit Judges.

PER CURIAM:

This is a direct criminal appeal in which the appellant challenges his convictions for conspiracy to possess with intent to distribute five kilograms or more of cocaine and possession with intent to distribute five kilograms or more of cocaine. 21 U.S.C. §§ 841(a)(1), (b)(1)(A), 846. The appellant raises two evidentiary challenges. Finding no abuse of discretion, we AFFIRM the district court's judgment.

I.     BACKGROUND

Ramos, a citizen of Mexico, approached the Eagle Pass Port of Entry on May 29, 2013, driving a white pickup truck. Agents referred the vehicle to

## No. 14-50846

secondary inspection, based on a notification they had received stating that the vehicle could have a hidden compartment above the transmission. A drug dog alerted on the center console in the front seat. An officer driving the vehicle to an X-ray machine removed the cup holder, which was not firmly attached, from the console and discovered a trap door. The officer discovered black packages wrapped in tape under the trap door. Another officer found a metal plate on the undercarriage of the vehicle, near the center console. Ultimately, the officers located a hidden compartment running the length of the center console and under the back seats of the truck, which contained 16 wrapped packages of cocaine with a net weight of 15.78 kilograms. Ramos admitted that he owned the truck. Ramos asserted that he had been driving to an auto parts store in Eagle Pass when he was stopped at the Point of Entry.

On April 11, 2013, approximately six weeks prior to the instant offense, Round Rock[1] police officers pulled Ramos over for driving 3 miles an hour over the speed limit, and as a result of that stop, the officers discovered an empty hidden compartment in the vehicle. That vehicle is the same truck that is involved in the instant offense. The following evidence regarding the Round Rock traffic stop was admitted at Ramos's trial. Ramos initially told Officer Raul Morales ("Morales") that he had driven from Mexico to Fort Worth the day before but then claimed that he drove to Fort Worth that morning and "came right back." Ramos explained that he had driven to Fort Worth to buy clothing for his business; however, there were no packages in the vehicle. Morales found that Ramos's handwritten insurance card was suspicious, but he did not write Ramos a ticket for it.

---

[1] Round Rock is a city in Texas situated on Interstate Highway 35 on a route between the Mexican border and Fort Worth, Texas.

2

No. 14-50846

Ramos gave the officers permission to search his vehicle. Sergeant Eric Mount ("Mount") found that the carpet in the truck was dirty and wrinkled in places where it should not have been wrinkled, indicating that it had been pulled up at some point. Mount noticed that the bolts holding the seats to the base of the truck were "tooled," or pulled off; the bolts were shiny, indicating that they were new, even though the rest of the vehicle interior was dirty and old. Mount discovered that the center console was "loose" and "wiggly," and he was able to move it with his finger. Mount pulled up the console and discovered a hidden compartment built into the truck. He could not reach inside, so he called for a drug dog. The dog alerted to the presence of narcotics in the center console, but no actual drugs were found. Officer Jeffrey Gogolewski explained that his dog could alert to trace elements of formerly present drugs even if there was no visible physical evidence. Mount admitted, however, that he had not told Ramos that they had discovered the hidden compartment.

Ramos told Morales that he owned the truck and was the primary driver, although his brother or cousin would occasionally drive it in Mexico. Ramos kept watching the officer searching the vehicle. Morales learned from Mount that the seats had been removed. Morales asked Ramos whether he had removed the seats, Ramos responded "No, the seats came with the truck." At that point, Ramos began to get aggressive and nervous. Ramos also explained that he "had just changed" the license plates on the truck. The officers transported the truck to the city shop, where workers removed most of the interior and discovered access to the compartment under a seat.

During the trial, the government sought to show Ramos's knowledge of the compartment through evidence of the Round Rock traffic stop. The government also called border patrol agents who testified with respect to their discovering the cocaine in a hidden compartment of Ramos's vehicle when he was stopped at the Eagle Pass Point of Entry. The government introduced

No. 14-50846

records of Ramos's history of crossing the border in his truck. There was evidence that showed Ramos's empty truck returning to Mexico on several occasions. This evidence was introduced to refute Ramos's statements to the agents that he came to the United States to buy used goods such as furniture and return to Mexico to sell the goods. Additionally, the government called a narcotics agent who testified as an expert witness with respect to the practices and habits of individuals who smuggle drugs across the border. The jury convicted Ramos of the cocaine conspiracy count and the substantive count of possession with the intent to distribute. Ramos now appeals.

II.    ANALYSIS

A.    Rule 404(b) Evidence

Ramos contends that the district court erred in admitting evidence at trial regarding the previous traffic stop. Federal Rule of Evidence 404(b) provides that evidence "of a crime, wrong, or other act is not admissible to prove a person's character in order to show that on a particular occasion the person acted in accordance with the character," although such evidence may be admissible "for another purpose, such as proving motive, opportunity, intent, preparation, plan, knowledge, identity, absence of mistake, or lack of accident." FED. R. EVID. 404(b)(1)–(2). As a threshold matter, however, evidence of an uncharged crime or "other act" must be sufficient to support a finding that the crime or act actually occurred. *United States v. Gutierrez–Mendez*, 752 F.3d 418, 423–24 (5th Cir. 2014) (citing FED. R. EVID. 104(b)). If evidence of the crime or act is sufficient, its admissibility under Rule 404(b) hinges on whether (1) it is relevant to an issue other than the defendant's character, and (2) it "possess[es] probative value that is not substantially outweighed by its undue prejudice" under Federal Rule of Evidence 403. *United States v. Beechum*, 582 F.2d 898, 911 (5th Cir. 1978). This court reviews a district court's evidentiary rulings for abuse of discretion, although the standard is "'heightened' when

evidence is admitted under [Rule] 404(b), because '[e]vidence in criminal trials must be strictly relevant to the particular offense charged.'" *United States v. Kinchen*, 729 F.3d 466, 470 (5th Cir. 2013) (quoting *United States v. Jackson*, 339 F.3d 349, 354 (5th Cir. 2003)).

As previously set forth, Ramos was charged with both participation in a cocaine conspiracy and with a substantive count of possessing cocaine with intent to distribute. In order to support a conviction for a drug conspiracy, the government must prove, among other things, that the defendant knew of and voluntarily participated in an agreement to violate narcotics laws. *United States v. Booker*, 334 F.3d 406, 409 (5th Cir. 2009). Likewise, the essential elements of a possession-with-intent-to-distribute offense include knowledge and the intent to distribute. *See United States v. Cain*, 440 F.3d 672, 675 (5th Cir. 2006). In a moving vehicle case, if the drugs are secreted in a hidden compartment, the defendant's control of the vehicle is insufficient to demonstrate knowledge; rather, there must be other circumstantial evidence demonstrating guilty knowledge. *United States v. Mendoza*, 522 F.3d 482, 489 (5th Cir. 2008). Guilty knowledge of the hidden drugs may be inferred from a number of factors, including nervousness, inconsistent statements, and obvious alterations to the vehicle. *See United States v. Casilla*, 20 F.3d 600, 606–07 (5th Cir. 1994).

As a threshold matter, Ramos argues that the evidence regarding the prior traffic stop in Round Rock was inadmissible because there is no evidence to support a finding that he knew of the hidden compartment at the time of that traffic stop. Ramos correctly states that the officers did not inform him that they discovered a hidden compartment in his truck at the time of the prior traffic stop. Nonetheless, during the traffic stop, the officers asked Ramos whether he had removed the seats, and Ramos responded that he had not. After being asked about the removal of the seats, Ramos's demeanor changed,

and he began to "get aggressive [and] nervous." As previously indicated, "nervous behavior may be considered as circumstantial evidence of guilty knowledge." *Casilla*, 20 F.3d at 607. Ramos then told the officers that he bought tires and changed tires on the vehicle, which was not responsive to the officer's question. We also note that Ramos changed his story about when he drove to Fort Worth while he was talking to the Round Rock officers.[2] This court has opined that "[p]erhaps the strongest evidence of a criminal defendant's guilty knowledge is inconsistent statements," because "a factfinder could reasonably conclude that they mask an underlying consciousness of guilt." *United States v. Diaz–Carreon*, 915 F.2d 951, 954–55 (5th Cir. 1990).

Ramos also told the Round Rock officers that he "had just changed the [license] plates." It is undisputed that *after* the Round Rock traffic stop, Ramos changed his license plates a second time. Ramos's changing of his license plate after the traffic stop was an apparent attempt to evade law enforcement, which indicates guilty knowledge. Indeed, at oral argument, Ramos conceded that he had no principled argument that the evidence of his changing the license plates constituted irrelevant or inadmissible evidence. It is also undisputed that Ramos owned the truck, and there was no evidence or claim that another individual had possession of the truck for an extended period of time. Moreover, the officers testified that they quickly noticed that the carpet had previously been removed and that new bolts were securing the seats. The new bolts were in contrast to the rest of the truck, which was old and dirty. Mount testified that the center console was so loose that when he touched it with his finger, it moved. *See Casilla*, 20 F.3d at 607 (explaining that evidence of obvious alternations to the vehicle is circumstantial evidence upon which a

---

[2] At first, Ramos told the officers that he had driven from Mexico to Fort Worth the previous day and then driven to Round Rock that morning. He later said he drove from Round Rock to Fort Worth and back that same morning.

jury may infer guilty knowledge).[3]  In light of evidence detailed above, we conclude that the jury could reasonably find by a preponderance of the evidence that Ramos knew of the hidden compartment in his truck at the time of the prior traffic stop. *Gutierrez-Mendez*, 752 F.3d at 424.

After concluding that the evidence shows Ramos had knowledge of the hidden compartment, we turn to the question of whether the evidence of the prior traffic stop is relevant to an issue other than Ramos's character. *Beechum*, 582 F.2d at 911.  We are persuaded that the evidence of the prior traffic stop is relevant to showing Ramos's knowledge of the drugs in his truck's hidden compartment at the time of the instant offense.  Very recently, in *United States v. Gil-Cruz*, this court addressed a case in which a defendant had previously crossed the border in a vehicle with an empty hidden compartment. __ F.3d __, 2015 WL 8597852 (5th Cir. Dec. 11, 2015).  In that case, Gil-Cruz had crossed the border in a gold Ford Focus on December 12, and the officers discovered an empty hidden compartment in the vehicle he was driving. *Id.* at *2.  Because no drugs or contraband was found in the compartment, he apparently was allowed to cross the border.  On January 6, Gil-Cruz drove a silver Ford Focus and passed through the border checkpoint. *Id.*  It was undisputed that Gil-Cruz owned the silver Ford Focus.  The next day, Gil-Cruz drove the same silver Focus to the checkpoint, and the officers discovered narcotics in a hidden compartment. *Id.*  Thus, the evidence demonstrated that Gil-Cruz had driven two different vehicles that had hidden compartments across the border.  This court concluded that Gil-Cruz's knowledge of the drugs contained in the hidden compartment could be inferred, in part, based on the

---

[3] Ramos contends that the evidence of the alterations to the truck is of little weight because the truck was salvaged.  The fact that the truck was salvaged did not render the evidence of alternations irrelevant.  In any event, that evidence was just one piece of the overall circumstantial evidence admitted to show Ramos's knowledge of the hidden compartment.

previous crossing at the border in which an empty hidden compartment had been detected.  *Id.*[4]  Similarly, here, the Round Rock officers had discovered the empty hidden compartment in Ramos's truck, which was shown to have crossed the border on previous occasions.  Also, Ramos, like Gil-Cruz, owned the vehicle with the hidden compartment.  Accordingly, because we are persuaded that the evidence of the prior traffic stop is relevant to showing Ramos's knowledge of the hidden drugs, we reject the contention that the traffic stop only shows a propensity to commit the crime.

The next question is whether the evidence regarding the prior traffic stop "possess[es] probative value that is not substantially outweighed by its undue prejudice."  *Beechum*, 582 F.2d at 911.  The evidence regarding the prior traffic stop has probative value regarding Ramos's knowledge or intent.  Of course, the evidence regarding the discovery of the hidden compartment during the traffic stop, particularly the dog alerting to the compartment, would be prejudicial to Ramos.  However, we do not believe it is unduly prejudicial.  "In weighing the probative value and unfair prejudice, this court must make a 'commonsense assessment of all the circumstances surrounding the extrinsic offense.'"  *United States v. Cockrell*, 587 F.3d 674, 678 (5th Cir. 2009) (quoting *Beechum*, 582 F.2d at 914).  "Rule 403 'would seem to require exclusion only in those instances where the trial judge believes that there is a genuine risk that the emotions of the jury will be excited to irrational behavior, and that this risk is disproportionate to the probative value of the offered evidence.'"  *Id.* at 679 (quoting *Beechum*, 582 F.2d at 915 n.20).  We do not believe that the evidence of the prior traffic stop would excite the jury to irrational behavior.  Moreover,

---

[4] In *Gil-Cruz,* the admissibility of the prior stop was not contested; instead, the issue was whether there was sufficient evidence to support a finding that Gil-Cruz knew of the hidden drugs in the context of determining harmless error.  *Gil-Cruz*, 2015 WL 8597852 at *2.

the district court gave limiting instructions designed to reduce the potential for unfair prejudice.[5] We conclude that the evidence of the prior traffic stop has probative value that is not substantially outweighed by its undue prejudice under Rule 403. Thus, we hold that the district court did not abuse its discretion in admitting evidence of the prior traffic stop.

Alternatively, with respect to the evidence that the dog alerted to the hidden compartment during the prior traffic stop, even assuming *arguendo* that such evidence may have been inadmissible, it was harmless error because of the overwhelming evidence showing Ramos had knowledge of the drugs.[6] In addition to the evidence set forth above, the large quantity of cocaine discovered in Ramos's truck's hidden compartment supports a finding of guilty knowledge at the time of the instant offense. In *Gil-Cruz,* this court relied on the fact that the defendant was carrying $286,000 worth of narcotics, and explained that such a high value of drugs can support an inference of knowledge. __ F.3d __, 2015 WL 8597852 at *2. Here, Agent Sanchez testified that the cocaine in Ramos's vehicle was worth $79,500 a kilo on the streets of Fort Worth, which meant that the street value of the cocaine was in excess of one million dollars. Under the circumstances of this case, we find it rather implausible that more than a million dollars' worth of cocaine was hidden in Ramos's truck without his knowledge. *Cf. United States v. Colmenares-Hernandez*, 659 F.2d 39, 41 (5th Cir. 1981) (stating that the "jury was entitled,

---

[5] The district court instructed the jury that Ramos was "not on trial for any act, conduct or offense not alleged in the indictment."

[6] In its initial closing argument, the government never mentioned that the dog alerted to the hidden compartment in the truck during the Round Rock stop. Instead, the government argued that Ramos told inconsistent stories during that stop and subsequently changed his license plates. However, after defense counsel in closing argument brought up the fact that the dog alerted even though there were no visible drugs, the government in rebuttal argued that the dog alerted to the residue of drugs.

No.  14-50846

on this record, to decline to credit appellant's explanation that an unknown person gave him millions of dollars worth of cocaine to transport without his knowledge"). Thus, any error in admitting evidence of the dog alerting to the hidden compartment during the traffic stop is harmless.

### B.    Drug Smuggler Profile Testimony

#### 1.    Standard of Review

Ramos next contends that the district court erred in admitting expert testimony from a Texas Department of Public Safety narcotics agent regarding the practices and habits of individuals who smuggle drugs across the border. Ramos contends that the testimony did not simply provide information about drug smuggling operations but instead compared his actions with the profile of a drug trafficker, thereby providing inadmissible opinion testimony about his guilt.

This court generally reviews a district court's evidentiary ruling for abuse of discretion. *United States v. Gutierrez-Farias*, 294 F.3d 657, 662 (5th Cir. 2002). The government argues that although Ramos filed a motion in limine seeking to preclude the use of the drug smuggler profile testimony, because Ramos did not object at trial, the claim should be reviewed for plain error. In his reply brief, Ramos contends that because the district court definitively ruled on the motion in limine regarding the evidentiary objection, no further objection was required under Rule 103(b) of the Federal Rules of Evidence. Rule 103(b) provides as follows: "Once the court rules definitively on the record–either before or at trial–a party need not renew an objection or offer of proof to preserve a claim of error for appeal." Here, during a pretrial conference, the district court denied the motion in limine regarding the challenged expert testimony, explaining that the government was entitled to present expert testimony of "drug courier conduct in general." Additionally, the court explained that the government was prohibited from soliciting

No. 14-50846

testimony "as to the ultimate guilt or state of mind of the defendant." The court directed the government "to be very careful to school your expert not to be making any references *directly to the defendant*, but rather just to give expert testimony as long as they're properly qualified." (emphasis added). At oral argument before this court, Ramos asserted that the district court's ruling failed to exclude testimony that implicitly amounted to an opinion that the defendant had knowledge of the drugs in the hidden compartment. We are not necessarily convinced that Ramos sufficiently raised this particular argument before the district court. Nonetheless, because we conclude the testimony was admissible, we assume for purposes of this appeal that the claim is properly preserved.

### 2.    Agent's Expert Testimony

At trial, when the prosecutor moved to qualify Agent Sanchez as an expert, Ramos's attorney expressly stated that there was no objection. Thus, the issue on appeal is not whether the agent was an expert but whether the expert's testimony was inadmissible. The Federal Rules of Evidence circumscribe when an expert witness may testify with respect to a disputed matter at trial. *Gutierrez-Farias*, 294 F.3d at 662. Rule 702(a) provides that an expert may testify if his "scientific, technical, or other specialized knowledge will help the trier of fact to understand the evidence or to determine a fact in issue." However, "[i]n a criminal case, an expert witness must not state an opinion about whether the defendant did or did not have a mental state or condition that constitutes an element of the crime charged or of a defense. Those matters are for the trier of fact alone." FED. R. EVID. 704(b). In the case at bar, the principal issue was whether Ramos knew that the cocaine was in his truck's hidden compartment. Thus, Rule 704(b) prohibited Agent Sanchez from stating an opinion as to whether Ramos knew that the drugs were in the compartment.

11

Additionally, this court has explained that a drug smuggler profile is "a compilation of characteristics that aid law enforcement officials in identifying persons who might be trafficking in illegal narcotics." *United States v. Medeles-Cab*, 754 F.3d 316, 321 (5th Cir. 2014) (internal quotation marks and citations omitted). "In 'pure profile evidence' cases, law enforcement personnel seek to testify that because a defendant's conduct matches the profile of a drug courier, the defendant must have known about the drugs he was transporting." *Id.* (citation omitted). This court has made clear that "drug courier profile evidence is inadmissible to prove substantive guilt based on similarities between defendants and a profile." *Id.* (internal citation marks and citations omitted). Testimony regarding methods that are unique to the drug business can help a jury understand the importance and implications of evidence presented at trial. *Id.* On the other hand, testimony that a defendant fits a drug smuggler profile runs the risk of suggesting that an innocent person had knowledge of the illegal drug offense. *Id.* "Our cases demonstrate that inadmissible drug courier profile testimony involves an agent drawing a direct connection between a drug courier characteristic (or characteristics) and the defendant in order to establish the defendant's guilt." *Id.* If, instead, an agent only testifies regarding certain characteristics of drug trafficking and does not draw a connection between the characteristic(s) and the defendant, that testimony is admissible. *Id.*

The government contends that Agent Sanchez's testimony was properly admitted because he never made any direct reference to Ramos and did not opine as to Ramos's knowledge or guilt regarding the cocaine. The government correctly contends that Sanchez never referenced Ramos or his state of mind; however, that does not completely resolve the issue. The proper inquiry is whether the expert's "testimony is the 'functional equivalent' of an opinion that the defendant knew he was carrying drugs." *United States v. Gonzalez-*

*Rodriguez*, 621 F.3d 354, 364 (5th Cir. 2010) (quoting *Gutierrez-Farias,* 294 F.3d at 663–64). In *Gutierrez-Farias,* although the expert witness did not specifically reference the defendant, his testimony "presented the jury with a simple generalization: In most drug cases, the person hired to transport the drugs knows the drugs are in the vehicle." 294 F.3d at 663. Accordingly, this court concluded that the expert testimony crossed the line between an explanation of the witness's analysis of the facts and an impermissible opinion on the ultimate legal issue in the case. *Id.* Thus, we must determine whether Agent Sanchez's testimony was an explanation of the facts of the case or an impermissible opinion regarding whether Ramos knew that the cocaine was in his vehicle.

During Agent Sanchez's direct examination, he testified regarding several characteristics of drug couriers, including: (1) drug smugglers being matched to the type of vehicle they drive (example of cowboy-type to a pickup truck); (2) drug smugglers use the voids in the vehicle to hide the drugs; (3) drug smugglers change license plates to avoid detection; (4) drug smugglers use "burner" cell phones that have virtually no history or personal information attached to the phone; and (5) the time line for the travel pattern of a drug smuggler from Mexico to a hub city in the United States and back to Mexico. A careful reading of Agent Sanchez's testimony indicates that it was an explanation of the facts of the case, and it made no assertion or generalization regarding Ramos's knowledge. Thus, we conclude that Sanchez's testimony was not the "functional equivalent" of an opinion that Ramos knew he was transporting drugs. *Gonzalez-Rodriguez,* 621 F.3d at 364.

In a related argument, Ramos contends that the government's closing argument was improper because it connected the dots between the expert's testimony and the evidence admitted at trial regarding Ramos's conduct. In other words, the government relied upon Agent Sanchez's testimony to argue

No.  14-50846

that Ramos knew that the cocaine was in his truck.  However, Ramos did not object to the government's closing argument.  Thus, this argument is reviewed for plain error.  To succeed on plain error review, an appellant must show (1) a forfeited error (2) that is clear or obvious and (3) that affects his substantial rights.  *See Puckett v. United States*, 556 U.S. 129, 135 (2009).  If he makes that showing, this court may exercise its discretion "to remedy the error . . . only if the error seriously affect[s] the fairness, integrity or public reputation of judicial proceedings."  *Id.* (internal quotation marks and citation omitted) (alteration in original).

In *United States v. Sanchez-Hernandez*, this court rejected a similar challenge to the government's closing argument.  507 F.3d 826 (5th Cir. 2007).  In that case, although the government had avoided eliciting an inadmissible opinion from the expert witness that the drug smugglers would not have allowed an outsider to participate, the prosecutor had made that argument to the jury.  *Id.* at 833.  This court acknowledged that its precedent criticizes the admission of this kind of direct testimony.  *Id.*  Nonetheless, it held that it was not error for the government to argue this inference when a defendant possessed illicit drugs and claims he had no knowledge of the drugs.  *Id.*  Thus, in the case at bar, it was not error, plain or otherwise, for the government to rely on Agent Sanchez's testimony in support of its argument that Ramos had knowledge of the cocaine in his truck's hidden compartment.

III.    CONCLUSION

For the foregoing reasons, the district court's judgment is AFFIRMED.

14