# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

No. 17-40125

UNITED STATES OF AMERICA,

Plaintiff - Appellee

v.

EDILBERTO MASO DIAZ,

Defendant - Appellant

United States Court of Appeals
Fifth Circuit

**FILED**

November 21, 2018

Lyle W. Cayce
Clerk

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 2:15-CR-1077-3

Before DENNIS, OWEN, and SOUTHWICK, Circuit Judges.

PER CURIAM:*

Edilberto Maso Diaz (Maso) appeals his jury convictions for three counts of possession with intent to distribute marijuana and one count of conspiracy to commit the same. He contends that the district court reversibly erred by permitting the Government to present inadmissible hearsay statements from an alleged coconspirator and by not offering a cautionary instruction about that declarant's statements. He alternatively alleges that these two errors

---

* Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

together amounted to cumulative error that deprived him of the right to a fair trial.  Finally, he challenges the sufficiency of the evidence against him.  We conclude that any erroneous admission of hearsay evidence was harmless and that his remaining arguments are without merit.  AFFIRMED.

# I

At Maso's two-day jury trial, the Government called as witnesses border patrol and law enforcement agents who detailed three incidents in March, May, and September of 2013 when drivers employed by Maso's trucking company, E&E Trucking, were arrested at the Mexican-American border after large quantities of marijuana were discovered among produce in the backs of the trucks.  The Government then presented witness testimony from three alleged coconspirators, Pablo Aroche-Calderin (Aroche), Rafael Nimer Torres (Torres), and Benigno "Juaso" Grey-Ramirez (Grey), all of whom had already pleaded guilty to related conduct.  These three witnesses each admitted during their testimony that they hoped to receive reduced sentences for testifying against Maso.  As discussed in more detail below, Torres testified to out-of-court statements made by Andres, another alleged coconspirator, that Maso challenges as inadmissible hearsay.

Aroche, the first coconspirator witness, testified that he was arrested in March and September 2013 for possession of marijuana when, while driving a truck for E&E, he knowingly attempted to drive loads of marijuana over the border.  Aroche specifically stated that it was his understanding that Maso and Grey had a business relationship in "drug trafficking, marijuana."  He testified that, in March, he was sitting in the truck readying to pick up a load of broccoli when Maso and Grey came up to talk to him.  Maso told him that there was another load that he would be picking up as well, but did not specify what it was.  Grey later called Aroche and told him where to pick up the load.  Aroche

testified that Maso and Grey were both present at the pick-up site while marijuana was loaded into the truck.

Aroche also gave his account of the September attempt to transport the load of marijuana, similarly stating that Maso gave him separate delivery instructions for the load of watermelons and "another load," which turned out to be marijuana, that was already in the truck. Aroche testified that Grey told him that Maso would pay him for the March and September marijuana loads if they arrived successfully. On cross-examination, Aroche acknowledged that he initially implicated Grey but not Maso in the marijuana conspiracy, only claiming Maso's involvement after he, Aroche, had been sentenced and the investigating agent asked about Maso.

Torres, who testified next, spoke primarily about a conversation between him and a man named Andres that occurred while Maso was present. Andres's relation to Maso is not clear from the totality of the trial testimony; witnesses seemed uncertain as to whether he was Maso's brother, cousin, or friend. Torres testified that Andres told him that "if [Torres] was willing to traffic marijuana, they had trucks." Torres further testified that Andres "told me Maso devoted himself to trafficking marijuana, that's what he told me, I never saw it." Torres later reiterated: "I knew that Andres and [Maso] devote themselves to carrying drugs. Maso never told me anything like that, nor did he insinuate it, but Andres had told me that's what they devoted themselves to, Andres told me that." Torres acknowledged that Maso himself never said anything to him about trafficking drugs. The defense contemporaneously objected to the admission of Andres's statements through Torres's testimony as hearsay. The district court overruled the objection, accepting the Government's justification that Andres was Maso's coconspirator. Torres stated that he declined to be involved with the marijuana trafficking, but

3

admitted to later being involved with Andres and Grey in trafficking different controlled substances, including methamphetamine, and asserted Grey was also involved. Torres never mentioned any involvement by Maso in these different drug transactions.

Grey, who testified next, stated that Maso came to his house in 2012 and "There we talked like the two adults that we were, came to an agreement. He would provide the means of transportation, I would provide the marijuana." Grey said he believed, but was not certain, that he and Maso were present when Aroche's truck was loaded with marijuana in March 2013. Grey further confirmed that Maso's drivers were paid the way Aroche had testified: Grey would pay Maso, who would then pay his drivers directly. Grey also testified that Andres "was not involved in this conspiracy" to traffic marijuana. Consistent with Torres's testimony, Grey did state that he had different drug dealings with Andres and Torres to traffic other substances. However, he clarified that "[w]ith Mr. Maso I just did marijuana."

The Government's final witness, Agent David Bishop, a case agent who investigated and arrested Maso, also testified about Andres's involvement or lack thereof. Bishop affirmed that he believed Grey's testimony that "Andres had nothing to do with this particular transaction." Bishop further stated that "whether or not Andres was involved in the drug trafficking we haven't been able to prove yet." When asked what he suspected of Andres's activities, Bishop stated:

> I believe [Torres] was the transporter, [Grey] was the broker in the Valley and I believe Andres was the recipient. . . . I believe [Torres] was going to get paid for transporting the batteries. I believe [Torres] got the batteries from [Grey]. I don't know if [Grey] knew that Andres was involved in that transaction. . . . I suspect Andres was [involved in that transaction].

17-40125

Finally, Maso testified in his defense, stating that Grey had proposed to him that they carry drugs, but that he refused; that he was not present when Aroche was told about or loading the drugs; and that he otherwise had no involvement in his drivers' drug smuggling using his trucks or any knowledge of the trafficking incidents until drugs were seized.

When instructing the jury, the court stated the following:

> In this case, the government called as witnesses three alleged accomplices . . . Rafael Nimer Torres, Benigno Grey-Ramirez . . . and Pablo Aroche-Calderin . . . all three of whom the government has entered into a plea agreement providing for the dismissal of some charges and a lesser sentence than the co-defendant would otherwise be exposed to for the offense to which the co-defendant pled guilty. . . . You should keep in mind that [their] testimony is always to be received with caution and weighed with great care. You should never convict the defendant upon the unsupported testimony of an alleged accomplice, unless you believe that testimony beyond a reasonable doubt.

The court did not mention Andres in this list of alleged accomplices. Maso raised no contemporaneous objection, nor did he request an alternative instruction.

The jury subsequently convicted Maso, and he was sentenced to 160 months of imprisonment. Maso timely appeals.

## II

Hearsay—out-of-court statements presented for the truth of the matter asserted—are not admissible in a jury trial unless an enumerated exception applies. FED. R. EVID. 801, 802. Rule 801(d)(2)(e) provides that such statements are admissible when they are used against a party and were "made by the party's coconspirator during and in furtherance of the conspiracy." We review the district court's decision to admit this evidence for an abuse of discretion. *United States v. Hall*, 500 F.3d 439, 443 (5th Cir. 2007). The

district court does not abuse its discretion if the Government proves by a preponderance of the evidence "(1) the existence of the conspiracy; (2) the statement was made by a coconspirator of the party; (3) the statement was made during the course of the conspiracy; and (4) the statement was made in furtherance of the conspiracy." *Id.*; *see* FED. R. EVID. 801(d)(2)(e). In assessing whether these elements are satisfied, "[t]he statement[s] [themselves] must be considered[,] but cannot by [themselves] establish the existence of the conspiracy or participation in it." *United States v. Nelson*, 732 F.3d 504, 516 (5th Cir. 2013) (citations and quotation marks omitted). "There must be 'independent evidence' establishing the conspiracy." *Id.*

Maso contends that Andres's statements were not admissible under the coconspirator exception because there was no independent evidence that they were in furtherance of any conspiracy Maso and Andres participated in together. *See generally United States v. Arce*, 997 F.2d 1123, 1128 (5th Cir. 1993) ("The conspiracy that forms the basis for admitting coconspirators' statements need not be the same conspiracy for which the defendant is indicted."). Though there was independent evidence that Maso was involved in marijuana trafficking and Andres with methamphetamine trafficking with at least one overlapping coconspirator—Grey—none of this evidence connected Maso to the methamphetamine or Andres to the marijuana.

However, though Maso's arguments call the admissibility of these hearsay statements into question, we conclude that reversal is not warranted because any error was harmless. "[E]rrors in evidentiary rulings are subject to the doctrine of harmless error." *United States v. Cornett*, 195 F.3d 776, 785 (5th Cir. 1999) (citations omitted). Under this doctrine, "[a]ny error, defect, irregularity, or variance that does not affect substantial rights must be disregarded." FED. R. CRIM. P. 52(a). "Under a harmless error analysis, the

issue is whether the guilty verdict actually rendered in this trial was surely unattributable to the error." *Cornett*, 195 F.3d at 785 (citations and quotation marks omitted). "Thus, the error will not require reversal if 'beyond a reasonable doubt the error complained of did not contribute to the verdict obtained.'" *Id.* (citing *Sullivan v. Louisiana,* 508 U.S. 275, 279 (1993)).[1]  The burden of proving harmlessness falls to the Government. *United States v. Olano*, 507 U.S. 725, 741 (1993).

Here, Aroche and Grey specifically implicated Maso in the marijuana trafficking independent of Andres's statements. Grey explicitly discussed how he and Maso entered into a drug trafficking arrangement and detailed his subsequent marijuana dealings with Maso. Aroche, similarly, testified that Maso instructed him to get directions from Grey on where to go to pick up another unspecified load, and that Maso was then present at the designated pick-up site while marijuana was subsequently loaded into the truck. Further, Aroche specifically told the jury that Maso and Grey had a business relationship in "drug trafficking, marijuana."

This is not a case, as in *Cornett*, where there was otherwise "no direct evidence" that the defendant committed the crime, 195 F.3d at 785, or, as in *United States v. Sumlin*, where the "case was a close one, and even the district judge remarked that he would not have been surprised had the jury returned a different verdict," 489 F.3d 683, 692 (5th Cir. 2007).  Moreover, the Government's closing argument indicates that Torres's testimony was not

---

[1] Our circuit has alternatively applied a less stringent standard to determine whether a potential evidentiary error was harmless. *See United States v. Gil-Cruz*, 808 F.3d 274, 276 (5th Cir. 2015) ("An error affects substantial rights if there is a *reasonable probability* that the improperly admitted evidence contributed to the conviction" (citing *United States v. Sumlin*, 489 F.3d 683, 688 (5th Cir. 2007)) (emphasis added).  Here, we hold that Maso is not entitled to relief under either standard.

critical to its case: referring to Torres as "more of a background witness" and making no reference to Andres's statements about Maso devoting himself to the trafficking of marijuana.  Because we conclude beyond reasonable doubt that the jury would therefore have delivered the same verdict without hearing the challenged hearsay statements, their admission thus does not justify reversal.[2]

For similar reasons, we also reject Maso's argument that there was insufficient evidence to support his guilty verdict.  We must affirm a guilty verdict if "after viewing the evidence and all reasonable inferences in the light most favorable to the prosecution," we determine that "*any* rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt."  *United States v. Vargas-O'Campo*, 747 F.3d 299, 301 (5th Cir. 2014) (emphasis in original).  Because we hold that the jury would have returned the same verdict even without Andres's testimony, there is certainly enough evidence to sustain the verdict when considering all evidence, including Andres's testimony, in the light most favorable to this verdict.

---

[2] Maso alleges that he may not have been found guilty without Andres's statements because Aroche and Grey were unreliable witnesses who contradicted each other.  This argument, however, relies on a mischaracterization of Grey's testimony.  Maso claims that when Grey testified he did not have any "dealings" with Aroche, he was denying ever meeting or knowing him, which would be inconsistent with Aroche's account.  Grey's testimony as a whole, however, clarifies that his statement instead addressed the structure of the conspiracy, emphasizing that he coordinated with Maso directly and Maso then handled the specifics of hiring and paying his drivers.  ("I have said from the beginning that my dealings have been with Mr. Maso, not with any driver. . . . I never had any business with Aroche.").

Indeed, Grey made similar statements about Torres, a member of the methamphetamine trafficking activities with which Grey also admitted his involvement.  Grey stated he had met Torres, but felt it necessary to clarify that Torres "was never hired by me to handle any drugs. . . . The fact that I was involved does not mean that I hired him."

### III

We review a party's claim that the district court erred in its jury instructions for abuse of discretion, asking "whether the charge, as a whole, is a correct statement of law." *United States v. Bennett*, 874 F.3d 236, 242 (5th Cir. 2017) (cleaned up). Where, as here, the appellant failed to object at trial, the instructions are reviewed for plain error only. Under this standard of review, Maso must establish a forfeited error that is clear or obvious and that affected his substantial rights. *Puckett v. United States*, 556 U.S. 129, 135 (2009). If he satisfies the first three prongs of the plain error analysis, this court has the discretion to correct the error if it "seriously affects the fairness, integrity, or public reputation of judicial proceedings." *Id.* (cleaned up).

Maso alleges that the district court abused its discretion by not including Andres in the list of alleged accomplices who the jury was instructed to believe only with caution and great care. Maso's argues on appeal that there is no valid reason for not including Andres in this instruction. However, Maso here ignores the critical distinction that Andres, unlike the testifying witnesses, did not make the prejudicial statements in hopes of receiving a reduced sentence after a guilty plea. Maso makes no further attempt to engage with *Bennett*'s demanding standard. The district court's instruction was not an abuse of discretion, plain or otherwise.

Accordingly, Maso's contention that the hearsay admission and jury instructions together constitute cumulative error is also meritless. "The cumulative error doctrine provides for reversal when an aggregation of non-reversible errors, *i.e.*, plain and harmless errors that do not individually warrant reversal, cumulatively deny a defendant's constitutional right to a fair trial." *United States v. Cervantes*, 706 F.3d 603, 619 (5th Cir. 2013) (citing *United States v. Delgado*, 672 F.3d 320, 343–44 (5th Cir. 2012) (en banc)).

"Allegations of non-errors do not play a role in cumulative error analysis since there is nothing to accumulate." *Cervantes*, 706 F.3d at 619. Because the jury instructions were not themselves error, Maso cannot succeed under this alternative theory.

**\*\*\***

For these reasons, we AFFIRM Edilberto Maso Diaz's conviction and sentence.